# STATE OF MICHIGAN

# COURT OF APPEALS

MEDREANIA JOHNSON,

        Plaintiff-Appellant/Cross-Appellee,

v

RAMACHANDRA KOLACHALAM, M.D.,
MUBASHIR SABIR, M.D., ST. JOHN HEALTH,
and PROVIDENCE HOSPITAL AND MEDICAL
CENTER, d/b/a PROVIDENCE PARK
HOSPITAL,

        Defendants-Appellees/Cross-
        Appellants,

and

R. B. KOLACHALAM, LLC,

        Defendant-Appellee.

UNPUBLISHED
July 21, 2016

No. 326615
Oakland Circuit Court
LC No. 2012-129640-NH

Before: GADOLA, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's entry of a default judgment against her and dismissal of her medical malpractice action as a sanction. Defendants filed a cross-appeal from the trial court's denial of their motion in limine and motion for partial summary disposition. We reverse the trial court's entry of a default judgment and dismissal of plaintiff's action, and affirm in part and reverse in part the trial court's orders denying defendants' motion in limine and motion for partial summary disposition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brought this medical malpractice action for injuries she sustained during a gallbladder removal surgery performed by defendant Mubashir Sabir, M.D., at Providence Park Hospital (Providence). Sabir, a general surgeon, performed a laparoscopic cholecystectomy (lap chole) on plaintiff, during which he "inadvertently" cut plaintiff's common hepatic duct (bile duct). Upon noticing the injury, Sabir contacted defendant Ramachandra Kolachalam, M.D., to

-1-

provide assistance in performing a second surgical procedure, a Roux-en-Y hepaticojejunostomy (Roux-en-Y), to repair the bile duct. The Roux-en-Y was unsuccessful, and plaintiff later required additional surgery to repair the injury.

On October 1, 2012, plaintiff filed this medical malpractice lawsuit against defendants, asserting that Sabir was negligent in cutting the bile duct during the lap chole and that both Sabir and Kolachalam were negligent in treating the injury. Plaintiff also alleged claims of negligence against defendants R. B. Kolchalam, LLC, Providence, and St. John Health System (St. John) under theories of direct and vicarious liability. Defendants Kolachalam and R. B. Kolachalam, LLC, were ultimately dismissed under the Good Samaritan statute, MCL 691.1502(1), and the case proceeded with defendants Sabir, Providence, and St. John.

## A. CIRCUMSTANCES LEADING UP TO DISMISSAL

On June 26, 2014, the trial court issued a final trial order, setting the trial date for August 18, 2014, and providing submission dates for jury instructions, exhibit and witness lists, and objections to proposed evidence. The order stated that it was a "continuing order" and that "[d]ates will adjourn accordingly should the trial date change." On July 3, 2014, the trial court issued a notice that trial would be adjourned until October 13, 2014. The notice contained only a change in the trial date, and did not address the submission dates for other filings. On July 9, 2014, the trial court issued a stipulated order compelling plaintiff to produce certain documents related to plaintiff's expert witness, Jason Green, M.D.

In September 2014, defendants filed motions to dismiss the case, arguing that plaintiff failed to comply with the July 9, 2014 discovery order and the filing dates set in the final trial order of June 26, 2014. On September 25, 2014, the court entered an order stating that "a default entry is ordered against [p]laintiff" for her "failure to comply with the Final Trial Order of June 26, 2014." On September 29, 2014, plaintiff filed an emergency motion to reinstate the case, arguing that the failure to timely provide proposed jury instructions and an exhibit list was not deliberate and that counsel inadvertently failed to recalculate the revised due dates when the court adjourned trial from August until October of 2014. Along with the motion, plaintiff also filed proposed jury instructions, an exhibit list, and a witness list.

At an October 8, 2014 hearing, the trial court granted plaintiff's motion to reinstate the case, concluding that dismissal was too harsh a sanction. The court instructed plaintiff's counsel to pay a fine of $1,000 "forthwith as a condition precedent to continue with this case," and instructed the parties to meet in chambers to select a new trial date. The record does not show that the court's oral ruling was ever entered in a written order.

On November 17, 2014, the trial court entered a new final trial order, setting trial to begin on December 15, 2014, and ordering plaintiff to submit a witness list to defense counsel by November 19, 2014. Plaintiff's counsel e-filed the witness list on November 19, 2014, but because the list was filed after 4:30 p.m., the circuit court recorded the document as being filed on November 20, 2014. On December 5, 2014, defendants filed a second motion for entry of default judgment, arguing that plaintiff failed to comply with the November 17, 2014 final trial order, and her counsel failed to pay the $1,000 sanction and reinstatement fee, so the default order remained in place. They argued that plaintiff had not complied with the July 9, 2014

discovery order. Plaintiff responded that counsel had paid the $1,000 fee, computer difficulties caused the delay in filing the witness list, and defendants suffered no prejudice because they already had a copy of the witness list, which plaintiff filed with her motion to reinstate the case.

At a hearing on the motion, the trial court concluded the following:

> A proper default was . . . entered in October of 2014. That was never properly set aside even though Plaintiff's motion was granted, and an order signing the order was never accepted because of Plaintiff's failure to pay a mere $30 reinstatement fee. Plaintiff also failed to pay a $1000 sanction as ordered, and failed to comply with the most recent final trial order. . . .

> For these reasons, and those stated by Defendant, the case remains in default, and the case is dismissed with prejudice.

## B. MOTION IN LIMINE

Meanwhile, on May 22, 2014, defendants filed a motion to limine to strike plaintiff's expert medical witnesses, Leonard Milewski, M.D. and Dr. Green, arguing that (1) Milewski improperly imposed a negligence per se standard by testifying that any bile duct injury during a lap chole amounted to malpractice; (2) Green was not qualified to testify regarding the standard of care under MCL 600.2169(1) because he did not spend the majority of his time practicing general surgery; (3) the testimony of both doctors was inconsistent and contrary to medical literature; and (4) neither doctor was qualified to testify regarding the propriety of Sabir performing the Roux-en-Y procedure because they had little or no experience performing the procedure. Following a hearing, the trial court determined that defendants misconstrued Milewski's testimony because he did not testify that every bile duct injury during a lap chole amounted to malpractice, but only that this had been his experience. The court concluded that Green spent a majority of his time practicing general surgery because there was significant overlap between general and colorectal surgery. The court further determined that the medical literature relied on by defendants supported Milewski's and Green's opinions. Accordingly, the court denied defendants' motion in limine.[1]

## C. PARTIAL MOTION FOR SUMMARY DISPOSITION

On May 1, 2014, defendants filed a motion for partial summary disposition under MCR 2.116(C)(10), arguing that Providence and St. John could not be held vicariously liable for Sabir's actions.[2] Specifically, defendants argued that no actual agency relationship existed

---

[1] On August 25, 2014, defendants filed an application for leave to appeal in this Court, raising the same arguments presented below. This Court denied the application "for failure to persuade the Court of the need for immediate appellate review." *Johnson v Kolachalam*, unpublished order of the Court of Appeals, entered October 3, 2014 (Docket No. 323300).

[2] Defendants additionally argued that they could not be held vicariously liable for the actions of Kolachalam because he was previously dismissed from the lawsuit. The trial court ultimately

-3-

because Sabir was an independent physician with staff privileges at the hospital, and no ostensible agency relationship existed because the hospital did not hold Sabir out as its agent. Additionally, they argued that no ostensible agency existed because Gayla Zoghlin, M.D., referred plaintiff for treatment to Kolachalam, and Sabir was associated with Kolachalam's practice. They further argued that plaintiff's direct liability claims were improper because none of plaintiff's expert witnesses offered any opinion regarding acts or omissions by the hospital.

The trial court concluded that there was sufficient evidence to create a genuine issue of material fact regarding whether Sabir was an employee of Providence and St. John for purposes of vicarious liability. Further, the court determined that the facts supported that an ostensible agency relationship existed because "plaintiff presented to the hospital for emergency treatment and was seen by Sabir with whom plaintiff had no pre-existing relationship." Accordingly, the trial court denied defendants' motion for partial summary disposition with regard to Sabir.[3]

## II. DEFAULT JUDGMENT AND DISMISSAL WITH PREJUDICE

### A. STANDARD OF REVIEW

Plaintiff argues that the trial court abused its discretion by entering a default judgment and dismissing her case with prejudice as a sanction. We agree. We review for an abuse of discretion a trial court's dismissal of a cause of action for failure to comply with the court's orders. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006).

### B. DISCUSSION

As a preliminary matter, the trial court erred by entering a default judgment against plaintiff under MCR 2.603, because MCR 2.603(A)(1) makes clear that a default may only be entered against a party "against whom a judgment for affirmative relief is sought." The party seeking affirmative relief is the plaintiff. Likewise, a default judgment may generally only be set aside under MCR 2.603(D)(1) if the party who is subject to the default demonstrates a meritorious defense. Therefore, under MCR 2.603, only a defendant may be subject to a default judgment. The trial court erred by imposing a default judgment against plaintiff, and erred by granting defendants' second motion for entry of a default judgment in part because it concluded that plaintiff's case remained in default because plaintiff did not comply with procedures to set

---

granted defendants' motion relating to the claim of vicarious liability for Kolachalam. This portion of the court's order is not challenged on appeal.

[3] Defendants filed a motion for reconsideration, arguing that (1) Sabir was an employee of Medical Resource Group (MRG), which was a separate corporate entity from the hospital, (2) plaintiff's referral by another physician prevented a finding of ostensible agency, and (3) the trial court failed to provide reasons for rejecting defendants' motion regarding plaintiff's direct liability claims. Without oral argument, the trial court denied the motion, concluding that defendants failed to demonstrate a palpable error by which the court and parties had been misled.

aside the default judgment. A circuit court necessarily abuses its discretion when it commits an error of law. *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

The corresponding sanction that could be imposed on plaintiff is dismissal, governed by MCR 2.504(B), which allows a court to dismiss a plaintiff's case for failure "to comply with these rules or a court order." Dismissal is a drastic sanction that should be undertaken with caution, and trial courts must carefully consider all other options on the record before imposing such a sanction. *Vicencio v Ramirez*, 211 Mich App 501, 506; 536 NW2d 280 (1995). Before imposing the harsh sanction of dismissal, courts should consider certain factors, including:

> (1) whether the violation was willful or accidental; (2) the party's history of refusing to comply with previous court orders; (3) the prejudice to the opposing party; (4) whether there exists a history of deliberate delay; (5) the degree of compliance with other parts of the court's orders; (6) attempts to cure the defect; and (7) whether a lesser sanction would better serve the interests of justice. [*Id.* at 507, citing *Dean v Tucker*, 182 Mich App 27, 32-33; 451 NW2d 571 (1990).]

The trial court first entered a default judgment and dismissed plaintiff's case after plaintiff failed to comply with a July 9, 2014 discovery order and failed to timely submit filings pursuant to a June 26, 2014 final trial order. The June 26, 2014 order stated that filing dates would "adjourn accordingly should the trial date change," and on July 3, 2014, the trial court adjourned trial from August until October of 2014. Although the notice of adjournment stated the new dates for trial, it did not clarify the revised filing deadlines. Counsel explained that the late filings were the result of his inadvertent failure to recalculate the deadlines after the court adjourned trial.

At a hearing on plaintiff's motion to reinstate the case, the court attributed the violations to counsel's mismanagement and concluded that dismissal was too harsh a sanction under the circumstances. The court directed plaintiff's counsel to pay a fine of $1,000, but did not specify when the fine was due, other than to say that it should be paid "forthwith." Plaintiff's counsel paid the fine on December 5, 2014. On November 17, 2014, the court issued a new final trial order, which required plaintiff to submit a witness list to defendants by November 19, 2014. Although plaintiff e-filed the document on November 19, 2014, it was not recorded until the next day. Plaintiff noted that defendants already had a copy of the witness list because plaintiff filed it along with her motion to reinstate the case.

Under these facts, dismissal was inappropriate. It appears that plaintiff's failure to timely file the witness list was inadvertent, particularly when the document was e-filed on the correct day. Defendants cannot show prejudice because they already had a copy of the witness list. Further, counsel's delay in paying the $1,000 fine can hardly be labeled an egregious violation when the trial court did not specify when the fine was due and did not reduce its directive to a written order. See *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009) ("[A] court speaks through its written orders and judgments, not through its oral pronouncements."). Although plaintiff had some history of failing to comply with previous court orders, there is no evidence that plaintiff failed to comply with other parts of the court's orders. Additionally, the record does not demonstrate that the trial court "carefully evaluate[d] all available options on the record" before imposing the harsh sanction of dismissal. *Vicencio*, 211

Mich App at 506. Under these circumstances, we believe a lesser sanction than dismissal would have better served the interests of justice. Therefore, the trial court abused its discretion by dismissing plaintiff's case.

## III. MOTION IN LIMINE

### A. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's determination on a motion in limine. *Elezovic v Ford Motor Co*, 472 Mich 408, 431; 697 NW2d 851 (2005). Likewise, a trial court's decision to admit or exclude expert witness testimony is reviewed for an abuse of discretion. *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004). "[A]ny error in the admission or exclusion of evidence will not warrant appellate relief unless refusal to take this action appears . . . inconsistent with substantial justice, or affects a substantial right of the opposing party." *Id.* (citation and quotation marks omitted). We review questions of statutory interpretation de novo. *Woodard*, 476 Mich at 557.

### B. DR. GREEN'S TESTIMONY

Defendants argue that Green's testimony was inadmissible under MCL 600.2169(1)(b) because Green did not spend a majority of his time in the practice of general surgery. We agree. MCL 600.2169(1)(b) states that, in an action alleging medical malpractice, any person providing expert testimony on the appropriate standard of care must have, "during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either" the "active clinical practice" or the "instruction of students" in "the same specialty" as the defendant physician. This Court has interpreted this statute to mean that a proposed expert witness must "spend greater than 50 percent of his or her professional time practicing the relevant specialty the year before the alleged malpractice." *Kiefer v Markley*, 283 Mich App 555, 559; 769 NW2d 271 (2009).

At his deposition, Green explained that he is board-certified in both general surgery and colorectal surgery. The American Board of Medical Specialties lists general surgery and colon and rectal surgery as two distinct specialties. Green explained that he split his time "50/50" between the two specialties, and that the two specialties share professional skills. Nevertheless, in *Woodard*, 476 Mich at 560, our Supreme Court held that "a specialist can only devote a *majority* of his professional time to *one* specialty." As strictly interpreted, Green is disqualified from offering expert testimony under MCL 600.2169(1) because he did not spend more than 50% of his professional time practicing the one most relevant specialty of general surgery.[4] Therefore, the trial court abused its discretion by allowing Green's standard of care testimony.

---

[4] See *Woodard*, 476 Mich at 577-579 (concluding that a proposed expert could not testify under MCL 600.2169(1) despite the fact that he spent a majority of his time practicing a subspecialty of the defendant's most relevant specialty); see also *Johnson v Bhimani*, unpublished opinion per curiam of the Court of Appeals, issued February 10, 2011 (Docket No. 292327).

## C. DR. MILEWSKI'S TESTIMONY

Defendants argue that the trial court abused its discretion by refusing to exclude Milewski's testimony because he improperly proposed a negligence per se standard of care and because all of the factors in MCL 600.2955 weighed against the admissibility of his testimony. "Generally, expert testimony is required in a malpractice case in order to establish the applicable standard of care and to demonstrate that the professional breached that standard." *Sullivan v Russell*, 417 Mich 398, 407; 338 NW2d 181 (1983). The proponent of expert testimony in a medical malpractice case must establish that the expert is qualified under MRE 702, MCL 600.2955, and MCL 600.2169. MRE 702 requires a trial court to determine that each aspect of a proposed expert witness's testimony, including the underlying principles and methodology, is reliable. MRE 702 states the following:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Although not dispositive, a lack of supporting medical literature applies to the determination of the admissibility of expert witness testimony. *Edry v Adelman*, 486 Mich 634, 640; 786 NW2d 567 (2010). "Under MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible." *Id*. at 642.

MCL 600.2955 requires a trial court to decide whether an expert's opinion is reliable and will assist the fact-finder through an examination of the opinion and its basis. The trial court must examine the facts, technique, method, and reasoning on which the expert relied using the non-exhaustive following list of factors:

> (a) Whether the opinion and its basis have been subjected to scientific testing and replication.
>
> (b) Whether the opinion and its basis have been subjected to peer review publication.
>
> (c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.
>
> (d) The known or potential error rate of the opinion and its basis.
>
> (e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation. [MCL 600.2955(1).]

Defendants first argue that Milewski imposed an improper standard of care by testifying that all bile duct injuries during lap chole surgeries constitute malpractice. At his deposition, in response to a question regarding whether a bile duct injury is a recognized risk of a lap chole, Milewski testified: "Oh, I understand it's recognized. I don't believe that it's acceptable." The following exchange also took place at Milewski's deposition:

*Q*. Have you ever found a lap chole case where there was a bile duct injury where malpractice was not committed?

*A*. No.

*Q*. Okay. You always believe that malpractice was committed?

*A*. Absolutely.

*Q*. Okay. Have you ever testified otherwise?

*A*. I have not.

Milewski conceded that injury to a bile duct is a recognized risk of the procedure. Reviewing his testimony in context, however, he did not testify that it was impossible for a bile duct injury to occur absent malpractice, or that such an injury amounted to negligence per se. Rather, his testimony was that he had never reviewed a lap chole case in which a bile duct injury occurred that was not the result of malpractice. Therefore, defendants misconstrue Milewski's testimony regarding the standard of care and the trial court did not abuse its discretion by refusing to exclude his testimony on this ground.

Moreover, at his deposition, Milewski testified that Sabir breached the standard of care in several respects beyond simply cutting the bile duct, which defendants do not address. Milewski testified that the standard of care is "what a similarly trained surgeon would do under a similar set of circumstances." He believed that it was necessary to operate on plaintiff, and that Sabir acted properly by beginning the operation laparoscopically. However, Milewski testified that Sabir breached the standard of care by (1) failing to "conver[t] to an open operation when the inflammation appeared as severe as it did," (2) failing to "obtai[n] the critical view, that being the identification of both the cystic duct and the cystic artery prior to clipping or cutting either one of them," (3) failing to recognize that the clip he chose "was not big enough to go across the duct," (4) using a GIA stapler in a critical area, and (5) attempting to repair the injury by performing a Roux-en-Y procedure as opposed to sending plaintiff off for tertiary care or to a hepatobiliary surgeon. In sum, defendants misconstrue Milewski's testimony and then fail to address his actual opinions regarding Sabir's many breaches of the standard of care.

-8-

Defendants argue that the trial court erred by finding that Milewski's testimony was reliable under the factors set forth in MCL 600.2955(1), and because there was no medical literature supporting his opinion.[5] However, each of defendants' arguments concerning the trial court's application of the factors in MCL 600.2955(1) and the existence, or lack thereof, of supporting literature is predicated on the erroneous belief that Milewski testified that every incidence of bile duct injury occurring during a lap chole constitutes malpractice. As discussed above, defendants misconstrue Milewski's standard of care testimony. Accordingly, their arguments are immaterial to the circumstances as presented and do not warrant appellate relief.[6]

Defendants next argue that Milewski's testimony was inadmissible because it irreconcilably conflicted with Green's testimony. In particular, defendants contend that Milewski testified that injury to the bile duct is always negligence, while Green stated that such

---

[5] On this point, defendants argue that we should apply our Supreme Court's recent decision in *Elher v Misra*, 499 Mich 11; 878 NW2d 790 (2016), a case involving a bile duct injury that occurred during a lap chole, to conclude that Milewski's testimony is inadmissible under MRE 702 and MCL 600.2955. In *Elher*, 499 Mich at 15, the plaintiff retained an expert who testified that, absent extensive inflammation or scarring, it was always malpractice to injure the common bile duct during a lap chole. The expert opined that, because the plaintiff in *Elher* did not have inflammation or scarring, the defendant was negligent in cutting the common bile duct, but he could not provide any supporting authority for his opinion. *Id.* Our Supreme Court concluded that the testimony failed to meet the requirements of MRE 702 and MCL 600.2955 because the opinion "was based on [the expert's] own beliefs, there was no evidence that [the] opinion was generally accepted within the relevant community, there was no peer-reviewed medical literature supporting [the] opinion, [the] plaintiff failed to provide any other support for [the] opinion, and [the] defendants submitted contradictory peer-reviewed literature." *Id.* at 28. This case is readily distinguishable from *Elher* in that Sabir encountered significant inflammation when he began the lap chole, Milewski did not testify that any injury to the bile duct during the procedure constituted malpractice, and, as discussed in more detail below, plaintiff presented peer-reviewed literature supporting Milewski's testimony regarding the standard of care.

[6] Moreover, Milewski's testimony regarding the standard of care was supported by medical literature offered by plaintiff. To her response to defendants' motion in limine, plaintiff attached a peer-reviewed article indicating that the presence of "inflammation and scarring" during the performance of a lap chole "have led to the concept of 'Stop Rules' for surgeons performing this operation. In essence, if a safe dissection cannot be ensured laparoscopically, early conversion to an open approach should be readily accepted as the proper course." Afdhal et al, *Complications of Laparoscopic Cholecystectomy*, UpToDate (January 30, 2014), pp 1-2. The article further explained that if injury occurs during surgery, immediate repair of the injury should only be attempted "if the surgeon is comfortable with advanced biliary surgery. If not, the surgeon should obtain intraoperative consultation with a specialist who is skilled in this problem." *Id.* at 3. "Repair of biliary duct injuries should always be approached by an experienced multidisciplinary team consisting of a surgeon, diagnostic radiologist, interventional gastroenterologist, and an interventional radiologist." *Id.*

injury is not always the result of malpractice. Again, defendants misconstrue Milewski's testimony in this regard. Defendants further assert that the two experts disagree about whether it was necessary to proceed with the lap chole on the night in question, and when the procedure should have been converted from a laparoscopic to an open surgery. In *Chapin v A & L Parts, Inc*, 274 Mich App 122, 127; 732 NW2d 578 (2007), this Court explained:

> The facts that an opinion held by a properly qualified expert is not shared by all others in the field or that there exists some conflicting evidence supporting and opposing the opinion do not necessarily render the opinion "unreliable." A trial court does not abuse its discretion by nevertheless admitting the expert opinion, as long as the opinion is rationally derived from a sound foundation.

Defendants have not presented any evidence suggesting that Milewski and Green based their expert opinions on unsound principles, reasoning, or methodology. Both experts agree that when Sabir encountered the severe inflammation inside of plaintiff, he should have converted from a lap chole to an open procedure so he could see what he was doing and avoid cutting the bile duct. The slight differences in Green's and Milewski's testimony do not suggest that their opinions were unsound or unreliable. Therefore, the trial court did not abuse its discretion by refusing to exclude the testimony on this basis.

Finally, defendants argue that Milewski should not be allowed to testify regarding the propriety of Sabir performing the Roux-en-Y because he lacked the experience necessary to provide any opinion on the procedure. Milewski did not criticize Sabir's actual performance of the failed Roux-en-Y, but rather argued that Sabir should not have attempted the procedure because of his inadequate training and experience. Milewski was board-certified as a general surgeon, the same specialty as Sabir at the time he performed the lap chole and Roux-en-Y procedures on plaintiff. Although he did not profess to be an expert on performing a Roux-en-Y, he stated that the procedure should only be attempted by a surgeon who had training and experience in performing that procedure. Knowledge that the procedure was tricky and should not be attempted by a novice was well within Milewski's area of expertise, and was supported by medical literature. Therefore, the trial court did not abuse its discretion by refusing to exclude his testimony on this ground.

## IV. MOTION FOR PARTIAL SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

We review a trial court's decision regarding summary disposition de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). In evaluating a motion brought under MCR 2.116(C)(10), the reviewing court considers affidavits, pleadings, depositions, admissions and other evidence of the parties in the light most favorable to the nonmoving party. *Id.* "Summary disposition under MCR 2.116(C)(10) is appropriately granted if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Greene v A P Prod, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006) (citation and quotation marks omitted).

## B.  DISCUSSION

Defendants argue that the trial court erred by denying their motion for summary disposition regarding plaintiff's vicarious and direct liability claims against St. John and Providence related to Sabir's actions.  We agree with defendants about plaintiff's direct liability claim, but conclude that the trial court properly denied their motion regarding vicarious liability.

## 1.  ACTUAL AGENCY

Defendants first argue that Sabir was not an actual agent of the hospital because he was an independent contractor.  A hospital may be held vicariously liable for the negligence of its agents, including physicians.  *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 11; 651 NW2d 356 (2002).  However, "a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and merely uses the hospital's facilities to render treatment to his patients."  *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 250; 273 NW2d 429 (1978).  An independent contractor is "one who, carrying on an independent business, contracts to do work without being subject to the right of control by the employer as to the method of work but only as to the result to be accomplished."  *Candelaria v BC Gen Contractors, Inc*, 236 Mich App 67, 73; 600 NW2d 348 (1999) (citation and quotation marks omitted).

Defendants claim that Sabir was not an employee of the hospital because he was employed by MRG, a distinct corporate entity.  Defendants point out that Sabir testified that he was on-call for Kolachalam, not the hospital, at the time he performed plaintiff's surgery.  Additionally, defendants provided an affidavit of William E. Krueger, a senior claims analyst for the hospital, in which he stated that Sabir was employed by MRG, rather than the hospital.

In response, plaintiff provided the testimony of Sabir, in which he stated that he believed he was an employee of the hospital:

> *Q*.  Who were you employed by as of July of 2010?
>
> *A*.  St. John Providence.
>
> *Q*.  Okay.  I saw a reference to—in the answers to an entity Medical Resource Group?
>
> *A*.  Medical Resource Group is part of the hospital.
>
> *Q*.  Okay.  So that is St. John Providence Assencion [sic] Health? . . .  But as far as your checks, basically said something other than Medical Resource Group on them, do they not?
>
> *A*.  Yes.  All I know is that when I signed my contract, it was with one of the administrators, administrator for the hospital, I spoke to to get the contract, so I know I answer only to the, you know, the administrators of the hospital. . . .  I want to say St. John Hospital at the end of the day is probably, you know, writes me the checks.

-11-

Plaintiff presented evidence that St. John is the sole member of MRG, and that as part of its articles of incorporation, St. John reserved the right to "[a]pprove any managed care contractual arrangement on behalf of the Corporation or any controlled corporations including, without limitation, direct contracting arrangement with employee groups." Because the record contains competing evidence regarding Sabir's employment status, the trial court did not err by denying defendants' motion for summary disposition on plaintiff's actual agency claims.

## 2. OSTENSIBLE AGENCY

Next, defendants contend that no ostensible agency existed between Sabir and the hospital because plaintiff had a preexisting relationship with a referring physician. A hospital may be vicariously liable for negligent acts of its ostensible agents. *Grewe*, 404 Mich at 250-251. The proper inquiry is whether "the individual looked to the hospital to provide him with medical treatment and there has been a representation by the hospital that medical treatment would be afforded by physicians working therein." *Id*. An independent relationship between a physician and a patient that preceded a patient's admission to a hospital bars a finding of ostensible agency. *Zdrojewski v Murphy*, 254 Mich App 50, 66; 657 NW2d 721 (2002).

At her deposition, plaintiff testified that, after two visits to the emergency room, she spoke with Dr. Zoghlin over the phone and the doctor arranged for plaintiff to have an ultrasound. There was no prescription, and plaintiff merely presented to a clinic for the test. Over the phone, Zoghlin then told plaintiff to go to the hospital, and plaintiff went to Providence Park Hospital. Plaintiff testified that she did not know if Zoghlin made any arrangements for her to see a particular physician at the hospital. She just directed plaintiff to go to the hospital.

Defendants contend that plaintiff's contact with Zoghlin was a preexisting physician-patient relationship, and that Zoghlin referred plaintiff to Kolachalam, who was not the on-call general surgeon for the hospital on the day of plaintiff's surgery. Plaintiff asserted that she was never "treated" by Zoghlin, and that whether Zoghlin referred plaintiff to Kolachalam was irrelevant because plaintiff was treated by Sabir. Given this conflicting evidence, the trial court did not err by concluding that a material, factual dispute existed regarding whether plaintiff had a pre-existing relationship with a referring physician or merely sought treatment from the hospital.

Defendants claim that there can be no finding of ostensible agency because the hospital did not hold Sabir out as its agent. In *Chapa v St Mary's Hosp of Saginaw*, 192 Mich App 29, 33; 480 NW2d 590 (1991), this Court held that "[n]othing in *Grewe* indicates that a hospital is liable for the malpractice of independent contractors merely because the patient 'looked to' the hospital at the time of admission or even was treated briefly by an actual nonnegligent agent of the hospital." Rather, to prove ostensible agency, "(1) the person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one, (2) the belief must be generated by some act or neglect on the part of the principal sought to be charged, and (3) the person relying on the agent's authority must not be guilty of negligence." *Id*. at 33-34.

Defendants contend that the hospital did not identify Sabir as its agent. Defendants presented plaintiff's signed consent form, in which she acknowledged that "some of the physicians who manage the care are independent physicians and not agents, representatives, or employees of the facility." Plaintiff contends that the hospital neglected to inform her that Sabir

was not a staff doctor, which was sufficient to establish ostensible agency. Plaintiff explained that she presented to the hospital as an emergency case and she did not present to a specific physician. Plaintiff said she believed she was being treated by the hospital, and by admitting her, the hospital represented that she would be treated. Given her pain and distress when she arrived, plaintiff did not unreasonably fail to ask whether the individual doctor who treated her was an employee of the hospital or an independent contractor. See *Grewe*, 404 Mich at 253. Under the circumstances, plaintiff could have reasonably believed that defendant Sabir was an employee of the hospital. Accordingly, the trial court did not err by denying defendants' motion for summary disposition on plaintiff's ostensible agency claim.

## 3. DIRECT LIABILITY

Finally, defendants argue that there was no testimony to support plaintiff's claim of direct liability in this case. A hospital may be directly liable for malpractice through claims of negligence in supervision of staff physicians in addition to selection and retention of medical staff. *Cox*, 467 Mich at 11. Although plaintiff brought a claim of direct liability against the hospital, her allegations pertain only to the actions or omissions of the physicians, and she failed to provide any legal authority in support of her claim. Without properly asserting her claim or providing substantiating authority, the trial court should have granted defendants' motion for summary disposition on this claim.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs pursuant to MCR 7.219, neither party having prevailed in full.

/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro