CHAPA v ST MARY'S HOSPITAL OF SAGINAW

Docket No. 121841. Submitted July 16, 1991, at Lansing. Decided November 18, 1991, at 9:25 A.M.

Juanita Chapa, conservator of the estate of Salome Delgado, a legally incompetent adult, brought an action in the Saginaw Circuit Court against St. Mary's Hospital of Saginaw, alleging malpractice in the treatment of Mr. Delgado's head injury. The court, Robert S. Gilbert, J., ordered a bifurcated trial and, following the jury's finding that the physicians who had been negligent, Drs. Thepveera and Penput, were engaged by Mr. Delgado's family rather than by the defendant, dismissed the action. The plaintiff appealed.

The Court of Appeals *held:*

The trial court properly denied the plaintiff's motions for summary disposition and a directed verdict, framed the special questions to the jury in terms of whether the doctors in question had been engaged by Mr. Delgado's family rather than the defendant, and dismissed the plaintiff's action when the jury found that those doctors had been engaged by the family.

1. A hospital may be vicariously liable for the malpractice of doctors who are actual or apparent agents of the hospital. Although Mr. Delgado and his family looked to the hospital for his care when he was first admitted, the jury found that Dr. Thepveera was engaged by the family and that Dr. Penput was involved in Mr. Delgado's treatment at the behest of Dr. Thepveera; it is uncontroverted that only Dr. Thepveera and Dr. Penput were alleged to have committed malpractice. The plaintiff's contention that the apparent agency of a hospital should be determined solely by whether the patient looked to the hospital for care at the time of admission is untenable in situations where, as in this case, a doctor is subsequently engaged by the patient's family. The trial court properly held that the determination of apparent agency depended on

REFERENCES

Am Jur 2d, Agency § 13; Physicians, Surgeons, and Other Healers § 160.

Liability of hospital or sanitarium for negligence of physician or surgeon. 51 ALR4th 235.

whether the doctors in question had been engaged, either directly or indirectly, by Mr. Delgado's family.

2. The trial court's instructions and the special questions submitted to the jury accurately reflected the appropriate legal standard.

Affirmed.

AGENCY — PHYSICIANS AND SURGEONS — OSTENSIBLE AGENCY — HOSPITALS.

A doctor engaged by a patient to provide care while the patient is in a hospital is not an ostensible agent of the hospital merely because the patient looked to the hospital for care when first admitted to the hospital.

*Rifken & Kingsley, P.C.* (by *Michael J. Kingsley*), for the plaintiff.

*William E. Jungerheld* and *Thomas C. Wimsatt,* for the defendant.

Before: SHEPHERD, P.J., and CAVANAGH and FITZGERALD, JJ.

SHEPHERD, P.J. This is a medical malpractice case. Salome Delgado was admitted to defendant hospital after a fall. Although Mr. Delgado initially was treated by a physician provided by the hospital, the family doctor was later called in and became the attending physician. The alleged acts of malpractice occurred thereafter. A jury empaneled to try issues of liability specially found that Mr. Delgado's family, and not the hospital, engaged the family doctor. Plaintiff, conservator of Mr. Delgado's estate, appeals as of right from the trial court's October 2, 1989, "order of dismissal" entered after the jury rendered its verdict. We affirm.

On July 4, 1984, Mr. Delgado fell and was rendered semiconscious. The parties stipulated that at the time of his admission to the hospital through its emergency room on July 4, he looked

to the hospital for his care. At that time he was treated by Dr. George P. Schanz, the neurologist then on call at defendant hospital. The next day, July 5, 1984, Mary Jane Sanchez, Mr. Delgado's stepdaughter and a nurse's aide, telephoned the office of Dr. Thepveera, Mr. Delgado's "long-standing" family doctor. Plaintiff admits in her brief on appeal that Dr. Thepveera "took over as the attending physician" that day.

In a discovery deposition, plaintiff's expert testified that of all those who treated or rendered medical services to Mr. Delgado, the only ones who breached the applicable standard of care were Dr. Thepveera and a Dr. Penput, who treated Mr. Delgado at Thepveera's request while Thepveera was out of town. Plaintiff does not contend that any other personnel were negligent. Accordingly, defendant can be liable to plaintiff only if Drs. Thepveera and Penput are agents of defendant. In its answer to plaintiff's complaint, defendant denied that its agents or employees were negligent. At issue below was whether Thepveera and Penput were the apparent agents of defendant.

The leading case in Michigan regarding the apparent authority of physicians to act on behalf of a hospital, also referred to as "ostensible agency," is *Grewe v Mount Clemens General Hosp,* 404 Mich 240, 250-251; 273 NW2d 429 (1978), wherein our Supreme Court held:

> Generally speaking, a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and merely uses the hospital's facilities to render treatment to his patients. See Anno: *Hospital-Liability-Neglect of Doctor,* 69 ALR2d 305, 315-316. *However, if the individual looked to the hospital to provide him with medical treatment and there has been a representation by the hospital that medical treatment would be af-*

*forded by physicians working therein, an agency by estoppel can be found.* See *Howard v Park,* 37 Mich App 496; 195 NW2d 39 (1972), lv den 387 Mich 782 (1972). See also *Schagrin v Wilmington Medical Center, Inc,* 304 A2d 61 (Del Super Ct, 1973).

*In our view, the critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems.* A relevant factor in this determination involves resolution of the question of whether the hospital provided the plaintiff with Dr. Katzowitz or whether the plaintiff and Dr. Katzowitz had a patient-physician relationship independent of the hospital setting. [Emphasis supplied.]

Of the two emphasized sentences in the foregoing quotation from *Grewe,* plaintiff contends that the second states the general rule or, at least, is dispositive of this case. That is, plaintiff argues that under *Grewe* "the key test is to whom [Mr. Delgado] was looking to [sic] for care at the time of his admission." We disagree.

In plaintiff's first argument on appeal, it is contended that the trial court should have granted plaintiff's motion for summary disposition or directed verdict in light of the italicized language. This argument clearly lacks merit. It is obvious that *Grewe* so framed the "critical question" because of the facts of that case, which differ substantially from those herein. In *Grewe,* the plaintiff, who suffered a dislocated shoulder at work, was admitted on an emergency basis and immediately was (mis)treated by two hospital physicians, apparently on call, with whom he had no prior doctor-patient relationship. It was that treatment that gave rise to the cause of action for malprac-

tice. In this case, Mr. Delgado was treated by a hospital doctor the day he was admitted. There was a question of fact whether Mr. Delgado's family instigated the replacement of defendant's personnel with the family doctor, but it was clear that the family doctor did take over on the day after Mr. Delgado's admission. And it is undisputed that the acts of alleged malpractice began five days after admission. The trial judge herein summed up the legal import of these factual distinctions:

> And I think the time that is important—in spite of what [*Grewe*] says, the time that's important is the time of the alleged malpractice. Because I don't think that you can walk into a hospital and say, "I don't want this doctor you appointed; I want my own doctor." And then when that doctor commits malpractice say, "Well, it's the hospital's fault that that doctor was treating me."

The essence of *Grewe* is that a hospital may be vicariously liable for the malpractice of actual or apparent agents. Nothing in *Grewe* indicates that a hospital is liable for the malpractice of independent contractors merely because the patient "looked to" the hospital at the time of admission or even was treated briefly by an actual nonnegligent agent of the hospital. Such a holding would not only be illogical, but also would not comport with fundamental agency principles noted in *Grewe* and subsequent cases. Those principles have been distilled into the following three elements that are necessary to establish the creation of an ostensible agency: (1) the person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one, (2) the belief must be generated by some act or neglect on the part of the principal sought to be

charged, and (3) the person relying on the agent's authority must not be guilty of negligence. *Grewe, supra,* pp 252-253; *Strach v St John Hosp Corp,* 160 Mich App 251, 261; 408 NW2d 441 (1987).

Simply put, defendant, as putative principal, must have done something that would create in Mr. Delgado's mind the *reasonable* belief that Drs. Thepveera and Penput were acting on behalf of defendant. *Grewe, supra;* see also *Strach, supra,* p 265 (quoting 1 Restatement Agency, 2d, § 27, p 103). If, as defendant contended below, Mr. Delgado's family arranged for Dr. Thepveera to replace Dr. Schanz, then the question becomes whether it was reasonable for Mr. Delgado to continue to believe that he was being treated by agents of defendant hospital. The reasonableness of the patient's belief in light of the representations and actions of the hospital is the "key test" embodied in *Grewe.*

As noted, plaintiff argues that because defendant admitted that Mr. Delgado was "looking to" defendant for treatment at the time of his admission, the trial court erred in failing (1) to grant summary disposition in favor of plaintiff pursuant to MCR 2.116(C)(10) and *Grewe* and (2) to grant plaintiff a directed verdict, which plaintiff had sought on the same basis at the opening of trial. For the reasons set forth above, we find no error in the trial court's denial of these motions based on its reading of *Grewe.*

Plaintiff's other claims of error are also based on plaintiff's narrow reading of *Grewe.* Plaintiff also contends that a new trial should be granted pursuant to MCR 2.611(A)(1)(a) because "there were profound irregularities in this trial in that the *Grewe* issue which was to be determined by the jury was never submitted to the jury." Consistent with plaintiff's other argument, plaintiff character-

izes "the *Grewe* issue" as the question of "to whom [Mr. Delgado] was looking at the time of his admission to the hospital." The irregularity alleged by plaintiff is the trial court's failure to give plaintiff's requested jury instructions. Plaintiff requested the following instruction:

> If you find that the Plaintiff at the time of his admission to the hospital was looking to the hospital for treatment of his physical ailments, your verdict should be for the Plaintiff. And, If you find that the Plaintiff at the time of his admission to the hospital merely viewed the hospital as a situs where his physician alone would treat him for his problems, you verdict should be for the Defendant.

The court declined to give the instruction and gave the following instruction to the jury instead:

> Now, we have prepared for you a Form of Verdict which we will give to you to take into the jury room with you. It's entitled in the Circuit Court and Saginaw County and the name of the case and the attorneys' names are on the heading. Then it says Form of Verdict.
> "The issue in this case is how Dr. Thepveera and Dr. Penput became involved in the care of Mr. Delgado between July 10th and July 16th of 1984.
> "Did Dr. Thepveera become involved in the care of Salome Delgado at the request of his family, particularly Mary Jane Sanchez, or was he provided by the St. Mary's Medical Center?"
> Then there's a place below that says, "Requested by the family," and another one that says, "Provided by St. Mary's Medical Center."
> On page 2, second question we want you to answer says:
> "Did Dr. Penput become involved in the care of Salome Delgado at the request of Dr. Thepveera to cover for him while he was out of town or was she provided by St. Mary's Medical Center?"

And a place for you to answer, "Requested by Dr. Thepveera," and a place for you to answer, "Provided by St. Mary's Medical Center," and a place for the foreman to sign.

The jury found that Dr. Thepveera became involved at the request of Mr. Delgado's family and that Dr. Penput became involved at Dr. Thepveera's request. After the court received this verdict, it granted a defense motion for dismissal that had apparently been pending. The court then purported to make certain findings of fact in connection with the dismissal. We find no error requiring reversal.

Plaintiff contends that the trial court "changed the issue to be submitted to the jury after the closing of proofs" and failed to submit to the jury the question of "to whom the patient or the patient's family was looking for care." Both of these related assertions lack a factual basis in the record. Although the court did decline to frame the issue as narrowly as plaintiff would have liked and refused to give plaintiff's requested instruction, we have concluded that the court correctly interpreted the law, whereas plaintiff did not. The question of defendant's alleged vicarious liability for Thepveera's and Penput's alleged malpractice was in fact presented to the jury. However, by the time of trial, this issue had been transformed into the question whether the hospital or Mr. Delgado's family had caused Thepveera to take charge of the case. Even plaintiff's counsel in his opening statement so framed the issue:

Mary Jane Sanchez is going to be very key because the testimony's [sic] going to differ because doctor—the test will be whether or not you feel Mary Jane Sanchez requested that Dr. Thepveera take over Mr. Delgado's care or whether they were

still looking to the hospital. That's the rather limited, narrow issue that this trial will revolve around.

The evidence at trial indicated that Dr. Thepveera was an independent practitioner, with his own office, who had seen and billed Mr. Delgado directly for several years. Thepveera denied being part of defendant's "team" and stated that he had the right to take a patient to any other hospital where he was on staff if he thought it was in the patient's best interest. Thepveera testified that he became involved in this case because of the phone call from Mary Jane Sanchez and that he took over the case only after the family released Dr. Schanz. Dr. Schanz's notes indicated that the family asked him to step aside for Dr. Thepveera.

On these facts, in particular, it would have been error for the court to give the instructions requested by plaintiff. Although it is arguable that the issue of ostensible agency could have been presented to the jury by different instructions, the court's instructions and special verdict form seem to fit the complexion of this case. In any event, plaintiff has preserved no claim of instructional error, other than the court's failure to give plaintiff's requested instruction. We do not find the court's instructions to be an error or defect in trial such that failure to set aside the verdict would be inconsistent with substantial justice, *Johnson v Corbet,* 423 Mich 304, 326; 377 NW2d 713 (1985), and accordingly find no basis for a new trial under MCR 2.611(A)(1)(a). Also, plaintiff was clearly aware of defendant's and the court's reading of *Grewe.* Thus, there is no merit to the claim that the court "changed the rules in midstream."

Finally, although plaintiff does not raise the propriety of the form of the court's "order of

dismissal," we note that whether the order is viewed as one pursuant to MCR 2.116(C)(10) or as a judgment upon a jury verdict, the disposition was proper. As noted, in light of the theories of the parties and the facts of this case, the verdict form used was an appropriate way to present the vicarious liability issue to the jury. And, assuming that the order was actually one granting summary disposition and not a judgment upon a jury verdict (or some combination), we find no error in the court's conclusion that there was no genuine issue of material fact and that defendant was entitled to judgment as a matter of law. Before trial, the parties each filed motions for summary disposition and it was apparently determined that the only genuine issue of material fact pertained to the question who engaged Drs. Thepveera and Penput. The trial court's decision to bifurcate the trial and submit the liability portion first to a jury was agreed to by counsel and is consonant with the procedures outlined in the court rule governing summary disposition. MCR 2.116(J)(1)(b).

Affirmed.