# STATE OF MICHIGAN

# COURT OF APPEALS

ABIGAIL SCHMITT,

   Plaintiff-Appellee,

v

GENESYS REGIONAL MEDICAL CENTER,

   Defendant-Appellant,

and

HENRY HAGENSTEIN, D.O., PC, and HENRY
HAGENSTEIN, D.O.,

   Defendants.

UNPUBLISHED
August 9, 2018

No. 337619
Genesee Circuit Court
LC No. 15-105334-NH

Before: RIORDAN, P.J., and K. F. KELLY and BOONSTRA, JJ.

PER CURIAM.

In this interlocutory appeal, defendant Genesys Regional Medical Center (Genesys)[1] appeals by leave granted[2] the trial court's order denying its motion for summary disposition in this medical malpractice action. We reverse and remand for entry of an order granting summary disposition in favor of defendant.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This medical malpractice case arises from Dr. Henry Hagenstein's alleged negligent treatment of plaintiff following a February 19, 2013 incident in which plaintiff was struck on the side of her face during a basketball game. Over the next few days, plaintiff began experiencing

---

[1] Defendants Henry Hagenstein, D.O., P.C. and Henry Hagenstein, D.O. are not parties to this appeal. We sometimes use "defendant" in this opinion to refer to Genesys.

[2] *Schmitt v Genesys Regional Med Ctr*, unpublished order of the Court of Appeals entered August 16, 2017 (Docket No. 337619).

-1-

headaches and dizziness. She went to her primary care doctor, Dr. Antony Daros, with whom she had treated since she was five years old. Dr. Daros referred her to Dr. Hagenstein for a neurological evaluation. Plaintiff testified at her deposition that Dr. Daros described Dr. Hagenstein as "my neuro guy" and stated that he was "in Genesys" or "at Genesys." At some point after contacting Dr. Hagenstein for an appointment, plaintiff received an appointment form from Dr. Hagenstein's office, at the top of which was printed, "Genesys Regional Medical Center Health Park."[3] The form also listed Dr. Hagenstein's address as "3635 Genesys Parkway" in Grand Blanc. Plaintiff and her mother both testified that they did not look to Genesys to provide them with a neurologist, but rather to Dr. Daros, who referred them to Dr. Hagenstein by name. Plaintiff also stated that she would have gone to see Dr. Hagenstein even if he were affiliated with another hospital.

Dr. Hagenstein's office is located in a medical office building situated on the Genesys campus, not in the Genesys hospital. The campus has one sign directing traffic to the hospital and another directing traffic to the medical building. Dr. Hagenstein testified at his deposition that he was unsure whether there was any signage for his office in front of the medical building, but stated that his name is listed on the directory located on the first floor. Dr. Hagenstein has staff privileges at the hospital, but is not a Genesys employee. He rents office space for his practice from Genesys Regional Medical Center Health Park. Dr. Hagenstein does not wear a coat or other clothing with defendant's logo on it. Dr. Hagenstein does possess an identification badge with his name and that of "Genesys Regional Medical Center." The identification badge was issued by defendant to allow him, as part of his staff privileges, to enter the parking lot and access secured sections of the hospital. However, he does not wear the badge in his private practice, never showed plaintiff the badge, and did not introduce himself to plaintiff as a Genesys doctor.

Dr. Hagenstein ordered medical tests and gave plaintiff an appointment form with the Genesys logo at the top. Dr. Hagenstein testified that he never sought permission to use that logo, and that, to his knowledge, defendant was neither aware that he used it nor had ever asked him to refrain from doing so. Dr. Hagenstein treated plaintiff only at his office and never treated her at the Genesys hospital. After an MRI revealed a lesion that could potentially cause a stroke, Dr. Hagenstein prescribed the statin drug "Simvastatin."

Plaintiff filed this medical malpractice action against Dr. Hagenstein, his corporation, and Genesys, alleging that Dr. Hagenstein had negligently prescribed Simvastatin and that the drug had caused extreme pain and weakness in her leg muscles; she asserted that the other defendants were vicariously liable for Dr. Hagenstein's alleged negligence. Defendant filed a motion for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of

---

[3] Plaintiff and her mother referred to the appointment form attached to plaintiff's response to defendant's motion for summary disposition as a "follow-up form" that they received after plaintiff's initial appointment with Dr. Hagenstein. Plaintiff's mother also stated in her deposition that she believed she had received a similar form from Dr. Hagenstein's office when she made the initial appointment.

material fact that Dr. Hagenstein was not an agent of Genesys. Plaintiff filed a response to the motion, arguing that it was reasonable for plaintiff and her mother to believe that Dr. Hagenstein was an agent of Genesys. Plaintiff claimed that she had relied on Dr. Daros' representation that Dr. Hagenstein was a "Genesys" doctor and on the fact that all the paperwork[4] reflected the word "Genesys" at the top. Plaintiff also indicated that she had relied on the fact that Dr. Hagenstein's identification badge states "Genesys Regional Medical Center" and on Dr. Hagenstein's testimony that he could "understand" why plaintiff believed that he was an agent of Genesys.

The trial court denied defendant's motion. The court noted that Dr. Daros had referred to Dr. Hagenstein as a "Genesys" doctor, that the appointment forms reflected the Genesys logo, that Dr. Hagenstein possessed an identification badge with that logo, and that signage outside Dr. Hagenstein's office also displayed the logo. The court also noted plaintiff's mother's testimony that she believed that Dr. Hagenstein was a "Genesys doctor" because Dr. Daros is a "Genesys doctor."[5]

As stated, this Court granted defendant's application for leave to appeal the trial court's order.

## II. STANDARD OF REVIEW

We review de novo a trial court's ruling on a summary disposition motion. See *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). Defendant brought its motion for summary disposition under MCR 2.116(C)(10). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5)." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. A genuine issue of material fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ on the issue. See *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

---

[4] Although the record only contains an appointment form used by Dr. Hagenstein with the Genesys logo on it, plaintiff's mother testified at her deposition that the logo was on "any kind of paperwork or appointment card" that she received from Dr. Hagenstein and that she believed, although she was not sure, that the logo was on the "initial paperwork."

[5] None of the correspondence or medical records contained in the lower court record that refer to Dr. Daros or his practice indicate that he is affiliated with or employed by defendant. Defendant has denied employing Dr. Daros. It is not clear how plaintiff's mother formed the belief that Dr. Daros was a "Genesys doctor;" she merely testified that "all of our doctors are Genesys doctors." In any event, the record does not contain any evidence supporting her belief.

## III. ANALYSIS

Defendant argues that the trial court erred by concluding that there was a genuine issue of material fact regarding whether Dr. Hagenstein was defendant's actual or apparent agent, and therefore by denying its motion for summary disposition. We agree.

"[I]n general, a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and simply uses the hospital's facilities to provide treatment to his patients." *VanStelle v Macaskill*, 255 Mich App 1, 8; 662 NW2d 41 (2003), citing *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 250; 273 NW2d 429 (1978). A medical facility may, however, "be vicariously liable for the malpractice of actual or apparent agents." *VanStelle*, 255 Mich App at 10, quoting *Chapa v St Mary's Hosp of Saginaw*, 192 Mich App 29, 33; 480 NW2d 590 (1991). If a patient looked to the hospital for treatment, rather than viewed the hospital merely as the place where his physician would treat him, the hospital may be liable. *VanStelle*, 255 Mich App at 8, citing *Grewe*, 404 Mich at 251.

The parties do not dispute that Dr. Hagenstein was not an actual employee of Genesys. The trial court's denial of defendant's motion was based on its conclusion that a factual issue existed regarding whether Dr. Hagenstein was an agent of Genesys. This Court has articulated a three-part test to determine whether a physician is an apparent or ostensible agent:

> [T]he following three elements . . . are necessary to establish the creation of an ostensible agency: (1) the person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one, (2) the belief must be generated by some act or neglect on the part of the principal sought to be charged, and (3) the person relying on the agent's authority must not be guilty of negligence. [*VanStelle*, 255 Mich App at 10, quoting *Chapa*, 192 Mich App at 33-34.]

Regarding the second factor of the test, "the defendant as the putative principal must have done something that would create in the patient's mind the reasonable belief that the doctors were acting on behalf of the defendant hospital." *VanStelle*, 255 Mich App at 10.

> Agency "does not arise merely because one goes to a hospital for medical care. There must be some action or representation by the principal (hospital) to lead the third person (plaintiff) to reasonably believe an agency in fact existed." *Sasseen v Community Hosp Foundation*, 159 Mich App 231, 240; 406 NW2d 193 (1986). [*VanStelle*, 255 Mich App at 11.]

Defendant argues that there is no question of fact that it took no action and made no representation to convey that Dr. Hagenstein was its agent. We agree. Although Dr. Daros told plaintiff that Dr. Hagenstein was "a Genesys doctor," Dr. Daros did not speak for defendant, as there is no evidence that he was defendant's agent, or that plaintiff's mother's belief that Dr. Daros was a "Genesys doctor" was reasonable—as stated, the record is devoid of evidence linking Dr. Daros to defendant other than plaintiff's mother's bare statement that "all of our doctors are Genesys doctors." Defendant was entirely uninvolved in Dr. Daros's conversation with plaintiff. And although Dr. Hagenstein had an ID badge issued by defendant, he used this

badge in the course of exercising his staff privileges at defendant's hospital, not in his private practice. Dr. Hagenstein never showed plaintiff the badge or treated her at defendant's hospital. Dr. Hagenstein used defendant's logo on his appointment forms, but he testified that he had not asked permission from defendant to do so. None of the above facts raise a genuine issue of material fact regarding whether defendant did something to make plaintiff believe that Dr. Hagenstein was its agent.

Further, while Dr. Hagenstein's practice is located on defendant's campus, and Dr. Hagenstein possessed staff privileges at defendant's hospital, "[t]he sole fact that a defendant hospital's facilities were used by an alleged negligent physician is insufficient to create the appearance of an agency relationship between the defendant hospital and the physician." *VanStelle*, 255 Mich App at 12. Thus, the location of Dr. Hagenstein's office is insufficient to create an appearance of agency, as are the maps, signs, and directory entries that merely aid patients in locating his office.

Plaintiff argues that defendant could also create the appearance of agency by omission, i.e., by failing to take certain actions that would have informed patients that Dr. Hagenstein was not an agent of defendant. However, the cases cited by plaintiff on this point are factually distinguishable because the plaintiffs in those cases were referred to a defendant hospital or an entity that provided specific services within the hospital, who then assigned them a treating physician; they were not referred to a specific physician with a private practice and staff privileges at a defendant hospital. See *Grewe*, 404 Mich at 254-255 ("We are convinced, as the jury must have been, that the plaintiff, when he entered the hospital, was seeking treatment from the hospital itself. . . . It is abundantly clear on the strength of this record that the plaintiff looked to defendant hospital for his treatment and was treated by medical personnel who were the ostensible agents of defendant hospital.")[6] In those cases, the question was whether a plaintiff who had been admitted to a hospital looked to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems. In this case, by contrast, plaintiff was never admitted to defendant's hospital, was referred to Dr. Hagenstein specifically, and was treated by him at his office, rather than defendant's hospital. These cases thus do not aid plaintiff's argument.

Further, even viewed in the light most favorable to plaintiff, defendant's conduct in failing to prevent plaintiff from forming the impression that Dr. Hagenstein was an agent of defendant was not negligent. See *VanStelle*, 255 Mich App at 10, quoting *Chapa*, 192 Mich App at 33-34 (noting that "the belief must be generated by some act or neglect on the part of the principal sought to be charged . . . ."). Dr. Hagenstein testified, and this testimony was not rebutted, that he never asked defendant's permission to use its logo on his appointment forms. Nor did Dr. Hagenstein ever show plaintiff his ID badge from defendant, rendering it irrelevant whether defendant should have indicated on the badge that Dr. Hagenstein was *not* an employee.

---

[6] Plaintiff also cites to an unpublished decision of this Court that is similarly distinguishable. Unpublished decisions of this Court are not, in any event, binding on future panels of this Court. MCR 7.215(C)(1).

We find plaintiff's argument that defendant created the appearance of agency by omission to be unpersuasive.

Given our resolution of the issue of whether defendant intentionally or negligently generated the alleged belief that Dr. Hagenstein was its agent, we do not address whether any such belief was reasonable.[7] The trial court erred by denying defendant's motion for summary disposition.

Reversed and remanded for entry of an order granting summary disposition in favor of defendant. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra

---

[7] We note, however, that both plaintiff and her mother testified that they did not look to defendant to be provided with a physician. This would appear to undercut their reliance, however reasonable, on any perceived status of Dr. Hagenstein as an agent of defendant. See *VanStelle*, 255 Mich App at 8, citing *Grewe*, 404 Mich at 251.