*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARY ANNE MARKEL,

      Plaintiff-Appellant,

UNPUBLISHED
January 4, 2024

v

WILLIAM BEAUMONT HOSPITAL,

      Defendant-Appellee,

and

HOSPITAL CONSULTANTS, PC, LINET
LONAPPAN, M.D., and IOANA MORARIU,

      Defendants.

No. 350655
Oakland Circuit Court
LC No. 2018-164979-NH

ON REMAND

Before: RIORDAN, P.J., and SHAPIRO and SWARTZLE, JJ.

SHAPIRO, J. *(dissenting)*.

I respectfully dissent, as the majority has (1) failed to comply with the Supreme Court's remand directions, and (2) erred on the question of ostensible agency.

In our prior opinion, *Markel v William Beaumont Hosp*, unpublished per curiam opinion of the Court of Appeals, issued April 22, 2021 (Docket No. 350655) (*Markel I*), the panel concluded that a question of fact on ostensible agency was not created, despite the following facts:

1. The patient entered the hospital through the emergency department and was admitted by emergency room physicians, not her personal physician. Her personal physician had no involvement with any of plaintiff's treatment at the hospital.

2. Plaintiff had no preexisting relationship with defendant Dr. Lonappan.

3. Dr. Lonappan is an internal medicine physician with a subspecialty in "hospitalist medicine." She has no private clinic and does not see or treat patients outside of Beaumont Hospital. Her practice is limited solely to serving as the attending physician for hospitalized patients not being admitted by their own, personal physician. According to Yale Medicine:

> A hospitalist is a physician who cares for inpatients, meaning they only work inside a hospital. These doctors have often completed residency training in general internal medicine, pediatrics, neurology, obstetrics and gynecology, or oncology. They may also be board-certified in hospital medicine. Hospitalists provide timely attention to all your needs, including diagnosis, treatment, and coordination of care across the many specialists you might see during your stay.

> Because they only work in this setting, hospitalists know how to navigate the hospital staff and protocols, and they are experts in treating the most common conditions that bring people to the hospital. You can think of a hospitalist as an in-house, temporary primary care physician focused on your care while you are hospitalized. Though hospitalists sometimes get to know their patients well, they do not continue to care for them after discharge. [Carrie MacMillan, Yale Medicine, *What Is a Hospitalist?* <https://www.yalemedicine.org/news/what-is-hospitalist> (posted October 26, 2022) (accessed December 21, 2023).]

4. Upon admission, the hospital assigned Dr. Lonappan to serve as plaintiff's attending physician. As the trial court put it, "once Beaumont assigned Dr. Lonappan a patient, Dr. Lonappan was responsible for examining the patient, coming up with a plan for that patient's diagnosis and treatment, and ultimately deciding whether to discharge the patient."

5. When on duty, Dr. Lonappan wears a white lab coat with credentials that say: "Beaumont Health System." The credentials also contain the words: "Hospital Consultants, PC." Plaintiff does not recall how Dr. Lonappan introduced herself and neither did Dr. Lonappan when she testified. However, Dr. Lonappan testified that when she introduces herself to patients, she simply says: "I'm Dr. Lonappan," without identifying any affiliations.[1]

---

[1] When questioned by plaintiff's counsel, Dr. Lonappan testified that introducing herself by name only was her standard practice. However, when questioned by her own counsel, she said that if

The Supreme Court reversed this Court's prior opinion and remanded for this Court to again consider the case, but this time "under the proper legal standard." *Markel v William Beaumont Hosp*, ___ Mich ___, ___; 982 NW2d 151, 152 (2022) (*Markel II*). The Supreme Court cited *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240; 273 NW2d 429 (1978), for the three elements of that standard:

> [First] The person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; [second] such belief must be generated by some act or neglect of the principal sought to be charged; [third] and the third person relying on the agent's apparent authority must not be guilty of negligence. [*Markel II*, 982 NW2d at 152, quoting *Grewe*, 404 Mich at 253 (alterations in original).]

The Supreme Court's order remanding this case went on to state:

> The rule from *Grewe* is that when a patient presents for treatment at a hospital emergency room and is treated during their hospital stay by a doctor with whom they have no prior relationship, a belief that the doctor is the hospital's agent is reasonable unless the hospital does something to dispel that belief. [*Markel II*, 982 NW2d at 153.]

In *Brackens v Detroit Osteopathic Hosp*, 174 Mich App 290; 435 NW2d 472 (1989), this Court held that it was a question of fact whether the defendant hospital could be held liable for two physicians' negligence in failing to properly diagnose the plaintiff. The two physicians were both independent contractors. In reversing summary disposition and reaching the conclusion that the agency issue was one for the jury, this Court stated: "Factors to be considered are whether the plaintiff had an independent relationship with the physician prior to entering the hospital and whether the hospital was really the situs for treatment by plaintiff's own physician." *Id.* at 293.

Application of this rule is straightforward in this case. First, plaintiff presented for treatment at the hospital emergency room. Second, she was treated during her hospital stay by a physician with whom she had no prior relationship. Third, she reasonably believed that Dr. Lonappan was an agent of the hospital, and the hospital did nothing to dispel that belief.

In our prior opinion, *Markel I*, unpub op at 4, the majority, citing *VanStelle v Macaskill*, 255 Mich App 1; 662 NW2d 41 (2003), overruled in part by *Markel II*, 982 NW2d 151, erroneously concluded that ostensible agency may not be found absent an affirmative act by the hospital. This Court stated: "[T]he defendant as the putative principal must have done something that would

---

the patient's primary care physician contracted with Hospital Consultants, she would tell the patient that she was seeing them in place of their primary care physician, and that she is a hospitalist "associated" with that physician. Certainly, if the fact-finder finds this second explanation credible, it would weigh against a finding of ostensible agency, but, at this stage, our role is to consider the evidence in the light most favorable to the nonmovant, plaintiff.

create in the patient's mind the reasonable belief that the doctors were acting on behalf of the defendant hospital." *Markel I*, unpub at 4.

The *Markel I* majority went on to cite *VanStelle*'s reliance on *Sasseen v Community Hosp Foundation*, 159 Mich App 231, 240; 406 NW2d 193 (1986), for the principle that "[a]gency does not arise merely because one goes to a hospital for medical treatment. There must be some action or representation by the principal (hospital) to lead the third person (plaintiff) to reasonably believe an agency in fact existed." *Markel I*, unpub op at 4. *VanStelle*'s reliance on *Sasseen* is dubious. In *Sasseen*, the plaintiff was admitted and treated by her personal physician while at the hospital.[2] *Sasseen*, 159 Mich App at 233-234. That situation clearly falls outside of *Grewe* and is far afield from circumstances in the instant case. Indeed, the majority's initial reliance on *VanStelle* is difficult to understand since that case involved treatment at a physician's private office. *VanStelle*, 255 Mich App at 3-5. Thus, the circumstances in *VanStelle* and *Sasseen* affirmatively demonstrate that the physician was not the hospital's agent.

However, when a patient is admitted by the emergency department or by a hospitalist, the opposite is true. A patient will reasonably assume a physician is the hospital's agent absent some action that makes clear to a reasonable person that this is not the case.

The only post-*Grewe* medical malpractice case even cited in the majority's opinion is *Wilson v Stilwill*, 411 Mich 587; 309 NW2d 898 (1981).[3] However, like *Sasseen* and *VanStelle*, the facts in *Wilson* are far afield from the instant case. In *Wilson*, "there was an independent physician-patient relationship prior to the hospital treatment." *Id.* at 610. Given that the physician in *Wilson* was not negligent, there could be no hospital liability based on agency, regardless of whether it was termed "ostensible agency" or "agency by estoppel." *Id.* Rather than recognizing *Wilson*'s inability to support its view, the majority opinion hangs its hat on the fact that, in *Wilson*, the Court referred to both "agency by estoppel" and "ostensible agency." From there, it backs into the view it stated in *Markel I*—that unless the plaintiff can demonstrate an affirmative

---

[2] Similarly, in *Chapa v St Mary's Hosp of Saginaw*, 192 Mich App 29; 480 NW2d 590 (1991), the plaintiff asserted that the hospital was liable for the negligence of his attending physician and a consultant requested by the attending physician. *Id.* at 30-31. We held the hospital was not vicariously liable, because even though the malpractice occurred at the hospital, the attending physician was the plaintiff's own family physician. *Id.* at 32-34.

[3] The majority does, however, cite a 1927 case involving a commercial contract for the sale of flour, *David Stott Flour Mills v Saginaw Co Farm Bureau*, 237 Mich 657; 213 NW 147 (1927), a 1942 commercial case dealing with the sale of sausages, *Flat Hots Co, Inc v Peschke Packing Co*, 301 Mich 331; 3 NW2d 295 (1942), a 1990 case involving the potential liability of a franchisor for a franchisee's negligence, *Little v Howard Johnson Co*, 183 Mich App 675; 455 NW2d 390 (1990), and a 2007 criminal case in which the defendant sought to suppress a witness's testimony on the grounds that a private individual should be considered an agent of the police, *People v Jordan*, 275 Mich App 659; 739 NW2d 706 (2007). A footnote in the majority opinion cites a fourth commercial case, this one from 1913, but fails to recognize that the Supreme Court concluded the existence of agency by estoppel was a question for the jury. *Pettinger v Alpena Cedar*, 175 Mich 162, 167; 141 NW 535 (1913).

-4-

representation of agency by the hospital, there can be no ostensible agency. In sum, rather than adhering to the remand order and applying the *Grewe* standard as defined in that order, the majority chooses instead to follow the standard advocated in Justice VIVIANO'S dissent. Notably, the remand order makes no reference to "agency by estoppel."

I recognize that the majority does cite to *Grewe* and points out that *Grewe* used the term "agency by estoppel." However, in the entire *Grewe* opinion, the word "estoppel" appears only once, immediately following which it states:

> In our view, the critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems. A relevant factor in this determination involves resolution of the question of whether the hospital provided the plaintiff with Dr. Katzowitz or whether the plaintiff and Dr. Katzowitz had a patient-physician relationship independent of the hospital setting. [*Grewe*, 404 Mich at 251.]

*Grewe* further clarified that "[t]he relationship between a given physician and a hospital may well be that of an independent contractor performing services for, but not subject to, the direct control of the hospital. However, that is not of critical importance to the patient who is the ultimate victim of that physician's malpractice[,]" *id.* at 252, and noted the lack of evidence that the hospital put the plaintiff on notice of the physician's status as an independent contractor. *Id.* at 253-255.[4]

---

[4] The hospital argues that ostensible agency may not be found because the attending physician was part of a hospitalist group that contracted with plaintiff's primary care physician to act as attending physician to any of the group's patients should they be hospitalized. As noted, Dr. Lonappan offered two different versions of what she told plaintiff, one of which included a statement that she was seeing plaintiff in lieu of her primary care physician, but another in which she simply introduced herself to plaintiff as her attending physician. In any event, as noted in *Johnson v Kolachalam*, unpublished per curiam opinion of the Court of Appeals, issued July 21, 2016 (Docket No. 326615):

> Defendants contend that the hospital did not identify Sabir as its agent. Defendants presented plaintiff's signed consent form, in which she acknowledged that "some of the physicians who manage the care are independent physicians and not agents, representatives, or employees of the facility." Plaintiff contends that the hospital neglected to inform her that Sabir was not a staff doctor, which was sufficient to establish ostensible agency. Plaintiff explained that she presented to the hospital as an emergency case and she did not present to a specific physician. Plaintiff said she believed she was being treated by the hospital, and by admitting her, the hospital represented that she would be treated. Given her pain and distress when she arrived, plaintiff did not unreasonably fail to ask whether the individual doctor who treated her was an employee of the hospital or an independent contractor. See *Grewe*, 404 Mich at 253. Under the circumstances, plaintiff could have reasonably believed that defendant Sabir was an employee of the hospital. Accordingly, the

-5-

The majority asserts that there is no evidence of "reliance." However, if affirmative assertions of reliance are required, it is difficult to see how *Grewe* could have been routinely applied to emergency room cases. The fact that the physician's practice takes place solely in the hospital is adequate to create reliance by the patient.[5]

It is not our role to weigh the facts for or against a showing of ostensible agency. So long as there is evidence to support a finding of ostensible agency, the question is for the fact-finder. As *Grewe* noted: "Agency is always a question of fact for the jury." *Id.* at 253, citing with approval *Stanhope v Los Angeles College of Chiropractic*, 54 Cal App 141, 146 (1942).

In sum, when a person enters a hospital through the emergency room and is assigned an attending physician by the hospital, those actions alone are sufficient to create reliance by the patient and to create a question of fact as to ostensible agency unless it is shown that the patient was advised and understood that the physician was not the hospital's agent. Put in the language favored by the majority, admission through the emergency room, the hospital's assignment of an attending physician, and permitting that physician to wear hospital identification are all affirmative acts giving rise to a reasonable belief that the physician is an agent of the hospital.[6] At a minimum,

---

trial court did not err by denying defendants' motion for summary disposition on plaintiff's ostensible agency claim. [*Johnson*, unpub op at 10.]

[5] The nature of a patient's reliance on a hospital was discussed at length in *Popovich v Allina Health Sys*, 946 NW2d 885 (Minn, 2020). In *Popovich*, the parties disagreed on the nature of the "reliance" that the plaintiff patient was required to show. According to the hospital in *Popovich*, "a plaintiff's claim fails unless the plaintiff can show that the patient would not have accepted care had the patient known that the personnel in the emergency were not actually agents or employees of the hospital." *Id.* at 895. The Minnesota Supreme Court rejected this argument, concluding that the issue of reliance does not require explicit affirmative reliance:

The second element, "reliance," focuses on the beliefs of patients and considers whether the patient looked to the hospital, rather than to a particular doctor, to provide care. Specifically, the fact-finder should determine if the plaintiff relied on the hospital to select the physician and other medical professionals to provide the necessary services. This reliance standard reflects the reality that most people who go to the emergency room do not know which medical professionals will treat them once they arrive. Instead, they rely on the hospital to select the professionals for them. [*Id.* at 898 (citations omitted).]

[6] As noted in *Smith v Saginaw S&L Ass'n*, 94 Mich App 263, 271-271; 288 NW2d 613 (1979), the focus should not be on whether the principal has affirmatively identified the alleged wrongdoer as its agent. In *Smith*, this Court held:

Whenever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of the principal the particular act, and such particular act has been

-6-

in the absence of providing clear information to the contrary, the hospital has "generated [that belief] by some act or neglect[.]" *Grewe*, 404 Mich at 253. Indeed, imposing the requirements sought by defendant would result in the end of ostensible agency even for emergency room physicians, a radical alteration in the law since *Grewe*.[7] If an affirmative act beyond those just mentioned is required to establish even a question of fact regarding agency, it is difficult to see why the hospital should even be deemed the principal of the physicians who work in their emergency rooms, but are actually independent contractors. In other words, the majority's approach is to wholly undo the standard defined in *Grewe* and referenced in *Markel II*.

For these reasons, I would reverse the trial court's grant of summary disposition and remand for trial. Accordingly, I dissent.

/s/ Douglas B. Shapiro

---

performed, the principal is estopped from denying the agent's authority to perform it. [*Id.* at 271-272 (quotation marks and citation omitted).]

[7] Justice VIVIANO'S dissent makes a policy argument that patients who are victims of malpractice need not seek compensation from the hospital. *Markel II*, 982 NW2d at 161 (VIVIANO, J, dissenting) ("Physicians staffing the hospital can be sued directly and *will likely have sufficient resources or insurance to make the plaintiff whole*.") (emphasis added). However, Justice VIVIANO does not cite to any actual statistics or evidence regarding physician liability coverage in Michigan. In fact, "[i]n the State of Michigan, medical malpractice insurance coverage is not required of physicians by law[,]" and "[t]he most common minimum limits of coverage are $200,000/$600,000." Nexus Insurance Services, *Michigan Medical Malpractice Insurance Coverage*, <https://www.nexus-insurance.net/michigan> (accessed December 21, 2023).