*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LOUISE KACZMARCZYK, as Personal
Representative of the ESTATE OF DONALD
KACZMARCZYK,

UNPUBLISHED
January 11, 2024

     Plaintiff-Appellee,

v

No. 353972
Wayne Circuit Court
LC No. 18-015126-NH

DEARBORN SURGERY CENTER,

     Defendant-Appellant,

and

JUDITH NAGY, D.O.,

     Defendant.

Before: LETICA, P.J., and SERVITTO and M. J. KELLY, JJ.

ON REMAND

PER CURIAM.

In this medical malpractice action, defendant[1] appeals by leave granted[2] the trial court order denying its motion for summary disposition and the order denying its motion for

---

[1] Defendant, Dr. Judith Nagy, D.O., settled with plaintiff and is not a participant in this or the prior appeal. "Defendant" in this appeal thus refers only to Dearborn Surgery Center.

[2] *Estate of Donald Kaczmarczyk v Dearborn Surgery Ctr*, unpublished order of the Court of Appeals, entered September 22, 2020 (Docket No. 353972).

rehearing/reconsideration of the order denying its motion for summary disposition. In a prior opinion, this Court set forth the background facts as follows:

> This case arises out of the death of Donald Kaczmarczyk on May 24, 2016, from purported complications of anesthesia administration in surgery. Before the surgery, Donald signed a consent form provided by defendant that stated, in part, that "the physicians providing services to me, including but not limited to, the surgeon, anesthesiologist, radiologist and pathologist are independent contractors with me and are not employees or agents of the Surgery Center or the Hospital." Donald also signed a Consent for Anesthesia Administration form that required him to consent to the "administration of anesthesia as determined necessary and advisable by a member of the Department of Anesthesia."
>
> Plaintiff, the Estate of Donald Kaczmarczyk, by Louise Kaczmarczyk as personal representative, filed a complaint asserting that Dr. Judith Nagy, Donald's anesthesiologist during the surgery at issue, had committed medical malpractice. Plaintiff claimed defendant was vicariously liable for Dr. Nagy's alleged malpractice because she was an employee or ostensible agent of defendant.[4] Defendant moved the trial court for summary disposition, arguing the lack of any genuine issue of material fact that, at the time of the incident at issue, Dr. Nagy was not an employee or agent of defendant. In denying defendant's motion for summary disposition, the trial court relied primarily on the consent for anesthesia form, reasoning that it controlled over the more general consent for treatment form. [*Estate of Kaczmarczyk v Dearborn Surgery Ctr*, unpublished opinion of the Court of Appeals, issued September 2, 2021 (Docket No. 353972) (*Kaczmarczyk I*")].

On appeal, defendant asserted that the trial court should have granted its motion for summary disposition because there was insufficient evidence from which a reasonable jury could conclude that Dr. Nagy was an ostensible agent of defendant, making defendant vicariously liable for her alleged medical malpractice. This Court agreed, remanding the case to the trial court for entry of summary disposition in defendant's favor. *Kaczmarczyk I*, unpub op at 2, 6. Plaintiff sought leave to appeal from our Supreme Court, which initially held the application in abeyance pending its decision in *Markel v William Beaumont Hospital*, 510 Mich 1071; 982 NW2d 151 (2022)"[3] then, after the latter was decided, in lieu of granting leave, vacated this Court's judgment and remanded the case to this Court "for reconsideration in light of *Markel*." *Kaczmarczyk Estate v Dearborn Surgery Ctr*, __ Mich ___; 996 NW2d 491 (2023).

In *Markel*, *supra*, our Supreme Court clarified the standard for establishing a claim of ostensible agency by quoting the standard set forth in *Grewe v Mt Clemens Gen Hosp*, 404 Mich 240, 253; 273 NW2d 429 (1978), pointing out that *Grewe* had not been overruled, and concluding that it remains the applicable law. The salient facet of *Markel* in regards to the issue of ostensible agency seems to be the Supreme Court's admonishment that "the requirement that 'the putative principal must have done something that would create in the patient's mind the reasonable belief'

---

[3]*Kaczmarczyk v Dearborn Surgery Ctr*, 973 NW2d 149 (Mich, 2022)

of agency" is not limited to affirmative actions, but rather that ostensible agency exists " 'when the principal *intentionally or by want of ordinary care*, causes a third person to believe another to be his agent who is not really employed by him.' " *Markel*, 510 Mich at 1072 (emphasis added in the original), quoting *Grewe*, 404 Mich at 252. This Court relied on the *Grewe* factors in its first opinion in this matter, and nothing in *Markel* call this Court's prior analysis in the instant case into question. Thus, we again reverse and remand for entry of summary disposition in favor of defendant.

We review de novo a trial court's ruling on a motion for summary disposition. *Hoffner v Lanctoe*, 492 Mich 450, 459; 821 NW2d 88 (2012). "A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 474-475; 776 NW2d 398 (2009). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (quotation marks and citation omitted). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 605 (quotation marks and citation omitted).

To establish a claim of ostensible agency, a plaintiff must show:

[First] The person dealing with the agent must do so with belief in the agent's authority and this belief must be a reasonable one; [second] such belief must be generated by some act or neglect of the principal sought to be charged; [third] and the third person relying on the agent's apparent authority must not be guilty of negligence. [*Markel*, 510 Mich 1071, quoting *Grewe*, 404 Mich at 253 (quotation marks and citations omitted; alterations in original).]

Looking at the first *Grewe* factor, the parties agree that in this matter, Dr. Nagy was an independent subcontractor rather than an actual employee or agent of defendant. Hospitals are generally not vicariously liable for the negligence of a physician who is an independent contractor who simply uses the hospital's facilities to provide medical treatment. *Grewe*, 404 Mich at 250. A hospital is not liable for the malpractice of independent contractors "merely because the patient 'looked to' the hospital at the time of admission or even was treated briefly by an actual nonnegligent agent of the hospital. *Chapa v St. Mary's Hosp*, 192 Mich App 29, 33; 480 NW2d 590 (1991). The critical question for determining whether an ostensible agency could be found "is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems." *Grewe*, 404 Mich at 251. "[W]hen a patient presents for treatment at a hospital emergency room and is treated during their hospital stay by a doctor with whom they have no prior relationship, a belief that the doctor is the hospital's agent is reasonable unless the hospital does something to dispel that belief." *Markel*, 510 Mich at 1071. On the other hand, "[a] patient who has clear notice of a treating physician's employment status or who has a preexisting relationship with a physician outside of the hospital setting cannot reasonably assume that the same physician is an employee of the hospital merely because treatment is provided within a hospital." *Id*.

The instant case involved scheduled surgery, not an emergency-room visit (as was the case in *Grewe*), but the alleged malpractice was attributed to defendant Dr. Nagy—not Donald's own general surgeon and with whom he had a prior relationship, Dr. Lulek. Thus, the question of whether Donald had had a reasonable belief that defendant had authority over Dr. Nagy requires beyond simply looking at the fact that Dr. Nagy provided anesthesia at the hospital where Donald's surgery was scheduled and performed. Moreover, plaintiff's theory of ostensible agency does not rest on defendant having caused Donald to believe Dr. Nagy to be defendant's agent intentionally, or by want of ordinary care. *Markel*, 510 Mich at 1172. Instead, plaintiff directs this Court to the consent-for-anesthesia form Donald signed.

The "Consent for Anesthesia Administration" form signed by Donald authorized the administration of anesthesia "as determined necessary and advisable by a member of the Department of Anesthesia." However, there is no indication of who employs or is employed by the Department of Anesthesia or in what capacities. Nevertheless, assuming that this form may be deemed to give rise to an inference that the anesthesia was a hospital-based service, Donald also signed a "Consent for Surgical Medical And/Or Other Treatment." That form specifically provided:

> I understand that the physicians providing services to me, including but not limited to, the surgeon, anesthesiologist, radiologist and pathologist are independent contractors with me and are not employees or agents of the Surgery Center or the Hospital. When a patient is under the care and supervision of a physician who is an independent contractor, it is the responsibility of the Surgery Center and its nursing staff to carry out the instructions of such physician. Neither the Surgery Center nor the Hospital is responsible for the medical decisions or actions of such physicians.

Clearly, then, Donald was aware of and agreed that any physician providing services to him at defendant's location was an independent contractor and not an employee of defendant. Of note, the form specifically named anesthesiologists such as Dr. Nagy. There is no conflict in asking a patient to acknowledge that anesthesia would be the responsibility of a department of the hospital, and also that his anesthesiologist would be an independent subcontractor. To the extent, then, that Donald had reason to believe that his anesthesiologist was defendant-appellant's agent, defendant well dispelled that misapprehension by obtaining Donald's express acknowledgment that his anesthesiologist was an independent contractor and not defendant-appellant's agent or employee.

As we indicated in *Kaczmarczyk I*, plaintiff also argues that "Dr. Nagy's curriculum vitae (CV), which lists her as having previously worked as a 'Staff Anesthesiologist' at defendant, and Dr. Nagy's procedure notes on paper carrying defendant's logo suggest she was an agent of defendant." *Id*. unpub op at 3. However, because plaintiff has not asserted that Donald ever saw Dr. Nagy's CV or procedure notes and there is no indication that Dr. Nagy, or anyone else, told Donald she was an agent or employee of the hospital, this argument fails.

Given the above, the first *Grewe* factor has not been met. Since all three *Grewe* factors must be met in order to establish ostensible agency, 404 Mich at 252-253, there is no genuine issue of material fact regarding whether Dr. Nagy is an agent of defendant, and defendant is, therefore, not vicariously liable for Dr. Nagy's alleged malpractice. The trial court erred when it concluded

there was a genuine issue of material fact on this issue and denied summary disposition to defendant.

We reverse and remand to the trial court for entry of summary disposition in defendant's favor. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Michael J. Kelly