*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SAUNDRA J. MORGAN, Personal Representative
of the ESTATE OF STANLEY E. MORGAN,

       Plaintiff-Appellee,

v

LAKELAND MEDICAL CENTER,

       Defendant-Appellant,

and

GREAT LAKES HEART & VASCULAR
INSTITUTE, PC, EMERGENCY PHYSICIANS
MEDICAL GROUP, PC, DILIP S. ARORA M.D.,
and KEVIN E. FERRELL,

       Defendants.

UNPUBLISHED
August 31, 2023

No. 355604
Berrien Circuit Court
LC No. 19-000069-NH

Before: CAMERON, P.J., and CAVANAGH and GADOLA, JJ.

ON REMAND

PER CURIAM.

This interlocutory appeal returns to this Court on remand from our Supreme Court for reconsideration in light of that Court's decision in *Markel v William Beaumont Hosp*, 510 Mich 1071; 982 NW2d 151 (2022). Upon reconsideration of this case in light of *Markel*, we again reverse the trial court's order and remand for entry of an order granting defendant Lakeland Medical Center's motion for partial summary disposition.

-1-

## I. FACTS

This case arises from the claim of plaintiff, the Estate of Stanley E. Morgan, that Lakeland Medical Center (Lakeland) is vicariously liable for the alleged malpractice of defendant, Dr. Dilip S. Arora. When this case was previously before this Court, we summarized the facts as follows:

> In 2010, decedent, Stanley E. Morgan, began treating with Dr. Arora for decedent's cardiac-related conditions. From 2010 to November 2017, decedent reportedly made 16 visits to Great Lakes Heart & Vascular Institute (Great Lakes) and was seen either by Dr. Arora or other Great Lakes staff. Plaintiff acknowledged that decedent went to Great Lakes for treatment on six occasions between September 29, 2016, and his death on November 19, 2017; on at least two of those occasions, decedent was seen by Dr. Arora.

> On November 16, 2017, decedent experienced chest pain; his wife, Saundra J. Morgan, drove decedent to Lakeland Medical Center. While at Lakeland, decedent was seen in the emergency room by an emergency medicine physician; he underwent various tests and evaluations in the chest pain unit. The parties do not dispute that Dr. Arora was not employed by Lakeland. On that day, however, Dr. Arora was at Lakeland seeing another patient. Decedent's daughter, Shaya Pethe, testified during her deposition that while accompanying her parents to a hospital room that day, she saw Dr. Arora standing at what appeared to be a nurses' station and he appeared to be charting while talking to someone who was sitting at the station.

> When the emergency medicine physician learned that decedent was treating with Dr. Arora for heart-related conditions, he contacted Dr. Arora. Plaintiff contends that decedent did not specifically request that Dr. Arora be contacted, but Pethe testified that she and her parents were reassured and happy when Dr. Arora arrived to treat decedent because he was decedent's treating cardiologist and they considered his presence a happy coincidence. Dr. Arora responded and evaluated decedent, but did not order decedent to be admitted to the hospital. Later that afternoon, decedent was released from the hospital and returned home. Three days later, on November 19, 2017, decedent collapsed from cardiac arrhythmia and died later that morning.

> Plaintiff initiated this action, alleging in part that Lakeland was vicariously liable for any negligence on the part of Dr. Arora under a theory of ostensible agency. Lakeland moved for summary disposition under MCR 2.116(C)(10) of plaintiff's claim of vicarious liability for the alleged negligence of Dr. Arora, contending that Dr. Arora was not actually or ostensibly its agent. Lakeland asserted that any claim of ostensible agency was defeated by decedent's longstanding physician-patient relationship with Dr. Arora. Plaintiff responded in part that despite decedent's preexisting physician-patient relationship with Dr. Arora, decedent nonetheless reasonably believed that Dr. Arora was an agent of Lakeland based upon Lakeland's acts and omissions, thereby establishing ostensible agency. Following a hearing, the trial court denied Lakeland's motion for partial summary disposition,

concluding that a question of fact existed for the jury regarding whether it was reasonable for decedent to believe that Dr. Arora was Lakeland's agent. [*Estate of Morgan v Lakeland Med Ctr*, unpublished per curiam opinion of the Court of Appeals, issued April 21, 2022 (Docket No. 355604), p 2.]

This Court granted Lakeland leave to appeal the trial court's order denying Lakeland's motion for summary disposition under MCR 2.116(C)(10).[1] This Court thereafter reversed the trial court's order and remanded to the trial court for entry of an order granting Lakeland's motion for partial summary disposition. *Morgan*, unpub op at 1, 7. This Court held that the trial court erred by concluding that there was a genuine issue of material fact whether Lakeland could be held vicariously liable for Dr. Arora's alleged negligence under a theory of ostensible agency. Thereafter, our Supreme Court issued its opinion in *Markel*, and subsequently remanded this case to this Court for reconsideration in light of *Markel*.[2]

## II. DISCUSSION

### A. STANDARD OF REVIEW

We review de novo a trial court's decision to grant or deny summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint; when reviewing a motion under MCR 2.116(C)(10), we consider the documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. at 160. Summary disposition under that subsection is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018).

### B. OSTENSIBLE AGENCY

Lakeland contends that the trial court erred by denying its motion for partial summary disposition under MCR 2.116(C)(10). Lakeland argues that because Dr. Arora was not its employee, it only can be held liable for Dr. Arora's alleged negligence under a theory of ostensible agency and that plaintiff has not presented sufficient evidence to establish ostensible agency in this case. When this case was before this Court previously, we discussed the relevant Michigan authority and its application in this case as follows:

Under Michigan law, a defendant typically is not vicariously liable for the tortious conduct of another person unless that other person is the defendant's employee or agent. *Laster v Henry Ford Health Sys*, 316 Mich App 726, 728; 892 NW2d 442 (2016). Specifically, a hospital typically is not vicariously liable for the negligence

---

[1] *Estate of Morgan v Lakeland Med Ctr*, unpublished order of the Court of Appeals, entered March 19, 2021 (Docket No. 355604).

[2] *Estate of Morgan v Lakeland Med Ctr*, ___ Mich ___; 990 NW2d 346 (2023).

of a doctor who, as an independent contractor, simply uses the hospital's facilities to provide medical treatment. *Grewe v Mt. Clemens Gen Hosp*, 404 Mich 240, 250; 273 NW2d 429 (1978).

However, a defendant may sometimes be held vicariously liable for the tortious conduct of another under a theory of ostensible agency. In *Grewe*, our Supreme Court explained:

> Generally speaking, a hospital is not vicariously liable for the negligence of a physician who is an independent contractor and merely uses the hospital's facilities to render treatment to his patients. . . . However, if the individual looked to the hospital to provide him with medical treatment and there has been a representation by the hospital that medical treatment would be afforded by physicians working therein, an agency by estoppel can be found. . . .
>
> In our view, the critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems. A relevant factor in this determination involves resolution of the question of whether the hospital provided the plaintiff with [the doctor] or whether the plaintiff and [the doctor] had a patient-physician relationship independent of the hospital setting. [*Grewe*, 404 Mich at 250-251 (citations omitted).]

This Court has since explained that under *Grewe*, a hospital may be vicariously liable for the malpractice of an actual or apparent agent, but a hospital is not liable for the malpractice of an independent contractor simply because the patient looked to the hospital for care at the time of admission or even was briefly treated by an agent of the hospital initially. *Chapa v St Mary's Hosp of Saginaw*, 192 Mich App 29, 33; 480 NW2d 590 (1991). "Agency does not arise merely because one goes to a hospital for medical care. There must be some action or representation by the principal (hospital) to lead the third person (plaintiff) to reasonably believe an agency in fact existed." *VanStelle v Macaskill*, 255 Mich App 1, 11; 662 NW2d 41 (2003).

In *Grewe*, the Court quoted with approval the discussion of ostensible agency in the California case of *Stanhope v Los Angeles College of Chiropractic*, 54 Cal App 2d 141; 128 P2d 705 (1942). That discussion has since been distilled into a three-prong test; to establish that a doctor treating the plaintiff was the ostensible agent of the hospital, the plaintiff generally must prove that (1) he or she dealt with the doctor in question with a reasonable belief in the doctor's authority as an agent of the hospital, (2) the plaintiff's belief was generated by some act or neglect on the part of the hospital, and (3) the plaintiff was not negligent. *Zdrojewski v Murphy*, 254 Mich App 50, 66; 657 NW2d 721 (2002). In other words, an ostensible agency

is created when the principal "causes a third person to believe another to be his agent who is not really employed by him." *Grewe*, 404 Mich at 252 (quotation marks and citation omitted). Thus, the hospital must have done something "that would create in the patient's mind the reasonable belief that the [doctor was] acting on behalf of the defendant hospital." *VanStelle*, 255 Mich at 10.

An additional relevant consideration is "whether the hospital provided the plaintiff with [the doctor] or whether the plaintiff and [the doctor] had a patient-physician relationship independent of the hospital setting." *Grewe*, 404 Mich at 251. An independent relationship between the doctor and the patient that preceded a patient's admission to the hospital precludes a finding of ostensible agency unless the hospital's acts or omissions created a reasonable belief that the doctor was an agent of the hospital, overriding the impressions created by the preexisting relationship. *Zdrojewski*, 254 Mich App at 66.

In *Zdrojewski*, the defendant doctor began treating the plaintiff in April 1995. In June 1995, the doctor performed surgery on the plaintiff at the defendant hospital. *Id*. at 53. Plaintiff alleged medical malpractice against the doctor, as well as the hospital under an ostensible-agency theory. *Id*. at 54. The trial court denied the hospital's motion for summary disposition on the ground that "it could not find as a matter of law that there was no ostensible agency relationship between" the hospital and doctor. *Id*. at 55. This Court found that the trial court erred, reasoning that "an independent relationship between a doctor and a patient that preceded a patient's admission to a hospital precludes a finding of ostensible agency, unless the acts or omissions of the hospital override the impressions created by the preexisting relationship and create a reasonable belief that the doctor is an agent of the hospital." *Id*. at 66 (emphasis added). Because the plaintiff and the doctor had a preexisting relationship and the plaintiff "failed to present any evidence of actions or omissions on the part of [the hospital] that would cause plaintiff to reasonably believe that [the doctor] was an agent of the hospital," this Court found that the trial court erred by denying the hospital summary disposition. *Id*. at 67.

In *Sasseen v Comm Hosp Foundation*, 159 Mich App 231, 240; 406 NW2d 193 (1987), this Court also addressed the issue of ostensible agency when the patient and the doctor had a preexisting relationship. In *Sasseen*, the plaintiff went to a hospital seeking treatment for stomach pain. *Id*. at 233. The plaintiff did not call his doctor, Dr. Haney, before going to the hospital, but Dr. Haney became involved in treating the plaintiff's stomach pain after a hospital physician consulted with Dr. Haney. *Id*. The plaintiff later filed a complaint alleging malpractice by Dr. Haney and alleging that the hospital was vicariously liable for Dr. Haney's malpractice. *Id*. at 234-235. The trial court granted the hospital summary disposition regarding the claim of vicarious liability. *Id*. at 235. This Court affirmed, concluding that "agency does not arise merely because one goes to a hospital for medical care." *Id*. at 240. Rather, "[t]here must be some action or representation by the principal (hospital) to lead the third person (plaintiff) to reasonably believe an agency in fact existed." *Id*. This Court explained:

[Although when plaintiff went to the hospital] he believed he would be treated and cared for by hospital personnel and did not look to Dr. Haney for care and treatment until after Dr. Haney had been assigned to take care of him, there is nothing which indicates that plaintiff honestly believed Dr. Haney was the hospital's agent rather than his own longtime personal physician who had staff privileges at the hospital. [*Id*. at 239-240.]

This Court observed that in that case, there was no "showing of any act or statement by defendant hospital which would have led plaintiff to believe that Dr. Haney was anything other than an independent contractor performing services for, but not subject to the direct control of the hospital." *Id*. at 240. Although the plaintiff did not recall telling hospital staff that Dr. Haney was his doctor, when asked during his deposition why Dr. Haney treated him, the plaintiff responded, "He's my family doctor." *Id*.

Subsequently, in *Chapa*, 192 Mich App at 33, this Court reiterated that *Grewe* does not support the proposition that "a hospital is liable for the malpractice of independent contractors merely because the patient 'looked to' the hospital at the time of admission or even was treated briefly by an actual nonnegligent agent of the hospital." In *Chapa*, this Court observed that "[t]he reasonableness of the patient's belief in light of the representations and actions of the hospital is the 'key test' embodied in *Grewe*," and that the hospital "must have done something that would create in [the plaintiff's] mind the *reasonable* belief that [the doctors] were acting on behalf of [the hospital]." *Id*. at 34. This Court suggested that the plaintiff's alleged belief that the doctor was the hospital's agent was not reasonable given that the plaintiff had a prior physician-patient relationship with the doctor, his family requested that the plaintiff be treated by the doctor, and the hospital did not otherwise act to create a reasonable belief that the doctor was acting on behalf of defendant. See *id*. at 33-34.

In this case, plaintiff contends that Dr. Arora was ostensibly Lakeland's agent. Plaintiff argues that Lakeland summoned Dr. Arora to provide care for him on November 16, 2017, when he went to the emergency room with chest pain. Plaintiff further contends that Lakeland never explained that Dr. Arora was not its agent, and in fact gave the impression through its website that Dr. Arora was an agent of the hospital. It is undisputed, however, that from 2010 through 2017 there was an independent, preexisting physician-patient relationship between decedent and Dr. Arora at Great Lakes before decedent sought care at Lakeland in November 2017.

As discussed, to demonstrate ostensible agency despite the preexisting physician-patient relationship requires plaintiff to establish that the hospital's acts or omissions caused decedent to reasonably believe that Dr. Arora was an agent of the hospital, thereby overriding the impression created by the preexisting relationship that no such agency existed. See *Zdrojewski*, 254 Mich App at 66. Here, the actions and omissions alleged by plaintiff is that Lakeland provided Dr. Arora to decedent for treatment without informing decedent that Dr. Arora was not an agent of the

hospital, and without any request from decedent, and that Lakeland's advertising on its website suggested that Dr. Arora was Lakeland's agent.

The trial court found that an issue of fact existed regarding whether it was reasonable for decedent to believe that Dr. Arora was an agent of Lakeland. Referring to Lakeland's arguments, the trial court found that "a[t] least as far as what the court has heard there was nothing that was present on the day of . . . the service that would [have] indicated that Lakeland had somehow put in the patient's mind that . . . Dr. Arora was somehow related in such a way as to create an agency relationship." The trial court then summarized plaintiff's position that "a member of the general public looking at Lakeland's advertisement, and all of the other presentations, would assume that somehow there was a relationship with Dr. Arora and with the other entities listed on the website." The trial court then denied Lakeland's motion, reasoning:

> The court's not going to make any ruling with regard to [Lakeland's advertising] despite the invitation of plaintiff's counsel. But, I do believe that that is certainly something that a trier of fact would need to examine to determine if there were actions on the part of Lakeland that would in fact establish at least a sense of possible agency involved in the general presentation of services for chest pain issues.
>
> That gets us into the first point that's raised in *Chapa*. . . . But, whether the fact the patient was reasonable in their belief that Dr. Arora somehow was an agent of Lakeland, and whether in fact [Lakeland's advertising] could be consider[ed], especially in light of, the fact that in the last 7 years prior to this particular event, the patient had been seeing Dr. Arora on a regular basis as a cardiologist.
>
> Nothing in the arguments, and nothing that the court can recall at this point, in terms of the documentation established whether in fact Dr. Arora actually saw, at least nothing I can recall, that he saw the patient at Lakeland during that 7-year period of time. Whether in fact there were occasions [he] would appear at Lakeland, occasions where he would appear at Vascular. All that, quite frankly, I think, would go into the mix in terms of what was reasonable for the patient to assume when he saw Dr. Arora on the [fateful] day.
>
> In any event, . . . those are the factors that, I believe, a trier of fact needs to assess as to whether or in fact the belief that this was an agent on part of the patient; whether that was in fact a reasonable belief.
>
> Those kinds of determinations, I think, are best left to the trier of fact; to the jury.

To survive a motion for summary disposition under MCR 2.116(C)(10), plaintiff was required to present sufficient evidence from which a reasonable jury could conclude that decedent believed that Dr. Arora was an agent of Lakeland, that the belief was reasonable, and that the belief was based upon an action or omission by Lakeland. See *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016) (a party moving for summary disposition under MCR 2.116(C)(10) satisfies its burden when the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim). In this case, plaintiff did not present facts from which a jury could draw those conclusions.

Because plaintiff had a preexisting physician-patient relationship with Dr. Arora, ostensible agency was precluded unless plaintiff could demonstrate that he believed Dr. Arora was an agent of Lakeland, that belief was reasonable, and that reasonable belief was created by the acts of omissions of Lakeland. Plaintiff contends that decedent believed that Dr. Arora was Lakeland's agent because when he sought medical care from Lakeland on November 16, 2017, Lakeland contacted Dr. Arora to treat him. This fact alone, however, does not overcome the presumption that decedent's preexisting physician-patient relationship barred a conclusion of ostensible agency unless some action or omission of Lakeland created in decedent a reasonable belief that Dr. Arora was an ostensible agent of Lakeland. See *Sasseen*, 159 Mich App at 239-240 (although the hospital provided the doctor to the plaintiff, the preexisting patient-physician relationship precluded a finding of ostensible agency without a further act or omission by the hospital indicating the agency).

Here, although decedent looked to Lakeland, and not Dr. Arora, for care when he went to Lakeland after experiencing chest pain, nothing in the record supports that decedent reasonably believed that Dr. Arora was Lakeland's agent rather than his own longstanding personal physician who had staff privileges at the hospital. The mere fact that Lakeland provided Dr. Arora to decedent without any request from decedent is not an act that would support a reasonable belief by decedent that Dr. Arora, his longtime physician whom he saw regularly at Great Lakes, was Lakeland's agent. See *id*.

Plaintiff argues that the fact that Dr. Arora was already at the hospital when decedent arrived distinguishes this case from *Sasseen*. However, the impressions created by the preexisting relationship between decedent and Dr. Arora can only be overridden by "acts or omissions of the hospital." *Zdrojewski*, 254 Mich App at 66. The fact that Dr. Arora happened to be in the hospital before decedent arrived is not an act or omission of Lakeland and, therefore, cannot override the impressions created by decedent and Dr. Arora's preexisting physician-patient relationship by creating a reasonable belief that the Dr. Arora is an agent of Lakeland. See *id*.

Plaintiff also presented evidence that Lakeland's website included Dr. Arora's name and picture in relationship to its cardiac care unit. Plaintiff contends that this advertising on its website is an action by Lakeland suggesting that Dr. Arora is Lakeland's agent. Plaintiff, however, did not present evidence that decedent ever

had seen Lakeland's website; the trial court also noted that there was no evidence that decedent ever had seen Dr. Arora at Lakeland. Because plaintiff presented no evidence that decedent reasonably believed Dr. Arora to be the agent of Lakeland based upon the actions or omissions of Lakeland, the trial court erred by concluding that there was a genuine issue of material fact whether Lakeland could be held vicariously liable for Dr. Arora's alleged negligence under a theory of ostensible agency. [*Morgan*, unpub op at 3-7.]

## C. *MARKEL*

After this Court issued the decision in this case, our Supreme Court issued its opinion in *Markel*. In *Markel*, the plaintiff went to the emergency room at Beaumont Hospital where she was admitted to the hospital and treated by Dr. Linet Lonappan. The plaintiff and Dr. Lonappan had no preexisting relationship. The plaintiff later sued the hospital, alleging that Dr. Lonappan was negligent in her treatment of the plaintiff and that the hospital was vicariously liable under the theory of ostensible agency. The trial court granted the hospital's motion for summary disposition of the plaintiff's claim. This Court in *Markel* affirmed the portion of the trial court's order granting summary disposition of the plaintiff's claim of vicarious liability under the theory of ostensible agency, relying in part on *Vanstelle*, 255 Mich App 1. Our Supreme Court granted leave to appeal and thereafter issued an order reversing the judgment of this Court in *Markel*, overruling *Vanstelle* to the extent that it "requires a plaintiff to show some additional, affirmative act by the hospital in every emergency room case to prove ostensible agency." *Markel*, 510 Mich at 1072.

In *Markel*, our Supreme Court reaffirmed the three-prong test from *Grewe*, which provides that to establish that a doctor treating the plaintiff was the ostensible agent of the hospital, the plaintiff must prove that (1) the person dealing with the doctor in question had a reasonable belief in the doctor's authority as an agent of the hospital, (2) the person's belief was generated by some act or neglect on the part of the hospital, and (3) the person was not negligent. See *Markel*, 510 Mich at 1071, referencing *Grewe*, 404 Mich at 253. In reaffirming the rule from *Grewe*, the Supreme Court announced a new standard for the application of *Grewe* as follows:

> The rule from *Grewe* is that when a patient presents for treatment at a hospital emergency room and is treated during their hospital stay by a doctor with whom they have no prior relationship, a belief that the doctor is the hospital's agent is reasonable unless the hospital does something to dispel that belief. Put another way, the "act or neglect" of the hospital is operating an emergency room staffed with doctors with whom the patient, presenting themselves for treatment, has no prior relationship. [*Markel*, 510 Mich at 1071-1072.]

The *Markel* Court specified, however, that an agency "cannot arise 'merely because one goes to a hospital for medical care.' " *Id*. at 1072, quoting *Sasseen*, 159 Mich App at 240. The *Markel* Court emphasized that the important distinction between *Markel* and cases such as *Sasseen* is that *Sasseen* involved a preexisting relationship between doctor and patient, but in *Markel* no previous relationship existed. *Id*. Explaining the significance of a preexisting physician-patient relationship, the Court stated that "[a] patient who has clear notice of a treating physician's employment status or who has a preexisting relationship with a physician outside of the hospital

setting cannot reasonably assume that the same physician is an employee of the hospital merely because treatment is provided within a hospital." *Id*. at 1071.

We conclude that the standard set forth in *Markel* supports this Court's previous decision in this case. It remains true under *Markel* that a patient "who has a preexisting relationship with a physician outside of the hospital setting cannot reasonably assume that the same physician is an employee of the hospital merely because treatment is provided within a hospital." *Id*. In this case, decedent's physician-patient relationship with Dr. Arora preceding his admission to Lakeland "precludes a finding of ostensible agency, unless the acts or omissions of the hospital override the impressions created by the preexisting relationship and create a reasonable belief that the doctor is an agent of the hospital." *Zdrojewski*, 254 Mich App at 66.

On remand, plaintiff asserts that Dr. Arora's presence at the hospital when decedent arrived and the fact that decedent did not specifically request Dr. Arora support the assumption that Dr. Arora was Lakeland's agent. In *Sasseen*, the plaintiff went to a hospital seeking medical treatment; he did not call his own physician, Dr. Haney, before going to the hospital. Treatment was initially provided by an emergency room physician, who then consulted with Dr. Haney who authorized the plaintiff's admission and then provided the plaintiff medical treatment. *Sasseen*, 159 Mich App at 233-234. The plaintiff claimed that Dr. Haney was negligent, and sought to hold the hospital vicariously liable under an ostensible agency theory. *Id*. at 235. Concluding that an ostensible agency relationship did not exist, this Court in *Sasseen* reasoned:

> While plaintiff's affidavit and deposition state that when he went to Almont Community Hospital he believed he would be treated and cared for by hospital personnel and did not look to Dr. Haney for care and treatment until after Dr. Haney had been assigned to take care of him, there is nothing which indicates that plaintiff honestly believed Dr. Haney was the hospital's agent rather than his own longtime personal physician who had staff privileges at the hospital. [*Id*. at 239-240.]

In *Markel*, the Supreme Court referenced *Sasseen* with implicit approval, distinguishing *Sasseen*, and cases like it, from the facts of *Markel* on the basis of "a preexisting relationship between doctor and patient."[3] *Markel*, 510 Mich at 1072. In this case, the existence of the longstanding physician-patient relationship between decedent and Dr. Arora distinguishes the applicable analysis from that applicable to the facts of *Markel*. Here, Dr. Arora was decedent's longtime personal cardiologist with whom decedent had regularly treated at Great Lakes. Indeed, decedent's daughter testified that the family considered Dr. Arora's presence at the hospital that day "a happy coincidence." *Morgan*, unpub op at 2. That Dr. Arora was, by happenstance, at the hospital that day does not override the impression created by the preexisting relationship between

---

[3] Because this Court issued its opinion in *Sasseen* before November 1, 1990, it is not strictly binding on this Court, but is considered precedential and is entitled to more deference than an unpublished opinion. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018). *Markel*'s implicit approval of *Sasseen* further supports our consideration of *Sasseen* in this case.

decedent and Dr. Arora that Dr. Arora was not the hospital's agent. See *Zdrojewski*, 254 Mich App at 66.

Plaintiff also asserts that Lakeland advertised Dr. Arora as a member of its "Chest Pain Center" on its website. Missing from plaintiff's proofs and argument, however, is any indication that decedent ever saw this website or that he was otherwise aware that Lakeland may have held Dr. Arora out as part of its "team." Absent any indication that decedent saw this website, the existence of the website does not support a reasonable belief by decedent that Dr. Arora was Lakeland's agent.

We also note that although *Markel* overruled *VanStelle*, this Court's reference to *VanStelle* in our initial opinion was not essential to our analysis. This Court's opinion focused on the preexisting physician-patient relationship in this case and plaintiff's failure to present evidence to override the impression created by that relationship. See *Morgan*, unpub op at 3-7. Moreover, while overruling *VanStelle*, *Markel* in fact reaffirmed the important distinction between cases with a preexisting relationship between doctor and patient and those without such a relationship. *Markel*, 510 Mich at 1072.

This Court's previous analysis comports with *Grewe* and the new standard announced in *Markel*. This case—unlike *Markel*—involves a preexisting physician-patient relationship. To demonstrate an ostensible agency despite a preexisting physician-patient relationship required plaintiff in this case to establish that the hospital's acts or omissions caused decedent reasonably to believe that Dr. Arora was the hospital's agent, thereby overriding the impression created by the preexisting relationship that Dr. Arora was not the hospital's agent. See *Zdrojewski*, 254 Mich App at 66. No evidence was presented that any act or omission by the hospital created a reasonable belief that Dr. Arora was an agent of Lakeland. See *Markel*, 510 Mich at 1072. No material questions of fact remain, and the trial court erred by denying Lakeland's motion for summary disposition of plaintiff's claim of vicarious liability arising under the theory of ostensible agency.

Reversed and remanded for entry of an order granting Lakeland's motion for partial summary disposition. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola

-11-